**People of the State of Illinois, Plaintiff-Appellee,
v. Ennis Thomas, Jr., Defendant-Appellant.**

**Gen. No. 50,893.**

First District, Fourth Division.

June 9, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn, Marshall J. Hartman, Paul Bradley and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, Elmer C. Kissane, Chief of Criminal Appeals and Ronald Butler, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

After a bench trial the defendant (Ennis Thomas, Jr.) was convicted of Indecent Liberties with a Child [1] and

---

[1] The offense of "indecent liberties with a child" is defined in section 11-4 of the Criminal Code of 1961 (Ill Rev Stats 1963, c 38, § 11-4), which provides in relevant part that:

was sentenced to the penitentiary for not less than ten nor more than twenty years.

### Contentions on Appeal.

1. Defendant was not proven guilty beyond a reasonable doubt.
2. Defendant did not receive a fair trial, in that (a) illegally seized evidence was introduced at trial; (b) statements made by the defendant after his arrest but before being afforded an opportunity to confer with counsel were erroneously admitted into evidence; (c) a photograph was introduced into evidence for which a proper foundation was not laid; and (d) his cross-examination of a prosecution witness was restricted.

On February 20, 1965, at approximately 4:00 p. m. Mrs. Dorothy Thomas (no relation to the defendant) notified the police that her two-year-old daughter, Shirleen, was missing from in front of a building located at 2833 West Madison in Chicago. A search was conducted until approximately 9:30 p. m., when she was discovered in a corridor on the third floor of the Alto Hotel, located at 2847 West Madison, by a resident of the hotel. Upon examination by her mother, Shirleen

---

(a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child:

(1) Any act of sexual intercourse; or

(2) Any act of deviate sexual conduct; or

(3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both.

Defendant was indicted for the offense of rape and indecent liberties with a child. After the prosecution had presented all of its evidence, the charge of rape was nolle prossed on the prosecution's motion.

was discovered to have been bleeding from the vaginal area. The girl was subsequently examined at Cook County Hospital by Dr. Robert Bass, who confirmed the bleeding from the vagina and testified that there was a stretching of the vagina, small lacerations and tears in the lining of the vagina and a tear in the perineum (which he described as the skin outside the vagina leading to the rectum). He also testified that the injury was caused by the entry of a blunt object into the vagina.

Titus Daniels testified that he was inside his record shop at 2837 West Madison (located between the building from which Shirleen Thomas disappeared and the Alto Hotel); that at approximately 4:00 p. m. he saw the defendant and Shirleen (both of whom he had seen on prior occasions, but not together) walking down the street; and that defendant was holding the girl's hand. Daniels further testified that he notified Shirleen's mother and also identified the defendant for the police.

Watson Johnson testified that he lived in a third-floor room of the Alto Hotel; that he returned to the hotel from work at approximately 9:30 p. m. and, in response to his inquiry as to why the police were in the neighborhood, was informed that they were searching for a little girl. Johnson further testified that he went to his room on the third floor of the hotel (the same floor on which the defendant lived) and discovered the girl in the corridor; that he informed the hotel management, the girl was brought down to the desk and the police were notified.

According to the testimony of the police, defendant was arrested at approximately 10:00 p. m. in front of a billiard parlor located at 2840 West Madison; he was wearing a coat on which there was a substance later identified by the police crime laboratory as blood; defendant was searched and a key was discovered (and seized) to room 316 of the Alto Hotel, where defendant resided. The officers then took defendant to the hotel and en-

tered his room. Photographs were taken of the room by the police. They also seized towels, a blanket, sheets and a bedspread from the room and put them in a plastic bag. The police forced him to remove some articles of clothing from his person which they also took. A police chemist, Joseph Price, testified that his tests revealed that there was blood on the blanket and bedspread. He did not state whether or not there was blood on the sheets. However, one of the police officers who searched the defendant's room at the hotel stated that on the sheets was a substance appearing to be blood.

The prosecution adduced further testimony of the police that, at the police station after defendant's arrest and while Titus Daniels was giving the police a statement as to what he had seen, defendant interrupted and stated: "I must be a sex maniac." There was additional testimony that at the hotel during the search of defendant's room, in response to the question of a police officer as to why he molested the girl, defendant stated: "I don't know why I did it, my head hurts, please help me."

At the trial defendant (who was over seventeen years of age) denied that he raped or sexually molested Shirleen Thomas, and he also denied even seeing the girl on the date in question. Defendant offered the alibi that he was in a billiard parlor from about 1:30 until 3:00 p. m. on that date, went to a cousin's house until 4:00 p. m. and then returned to the Alto Hotel to sleep for two hours; and that upon awakening he went to the home of another cousin where he remained until 9:00 p. m. No other testimony was adduced in support of that alibi.

**Opinion**

██ 1. Defendant first contends that he was not proven guilty beyond a reasonable doubt. The prosecution adduced evidence that the defendant was seen lead-

76

ing Shirleen Thomas down the street shortly after she was reported as missing; the girl was found on the third floor of the Alto Hotel, the same floor on which defendant resided; the girl was subsequently discovered to have been bleeding profusely from the vaginal area; blood was discovered on defendant's coat and also on a blanket and bedspread taken from his room; and defendant stated to a policeman in response to a question as to why he molested the girl: "I don't know why I did it, my head hurts, please help me." While defendant offered an alibi, which was not substantiated by other testimony, his story obviously was not believed by the trial judge. It is undisputed that in a bench trial the credibility of the witnesses, and the inferences to be drawn therefrom, are for the trial judge to determine. In the instant case we believe that the evidence adduced by the prosecution and believed by the trial judge is sufficient to establish the defendant's guilt.

2. Defendant next contends that he did not receive a fair trial and argues principally that the sheets, blanket and bedspread taken from his room at the Alto Hotel were illegally seized and therefore, over his objections, the State's witnesses should not have referred to the aforesaid articles nor should they have been admitted into evidence. The prosecution contends that (a) defendant's motion to suppress was not timely; (b) no written motion was ever filed; and (c) the error was not sufficiently prejudicial as to warrant a new trial.

Section 114–12 of the Illinois Criminal Code (Ill Rev Stats 1965, c 38, § 114–12) sets forth the procedure regarding motions to suppress illegally seized evidence. It provides in relevant part that:

> (b) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful. The judge shall receive evidence on any issue of fact necessary to determine the motion and

the burden of proving that the search and seizure were unlawful shall be on the defendant. If the motion is granted the property shall be restored, unless otherwise subject to lawful detention, and it shall not be admissible in evidence against the movant at any trial.

(c) The motion shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion.

Defense counsel's motion to suppress (and the basis therefor) was orally made during the testimony of Detective John Serafini, one of the policemen who searched the defendant's hotel room, as the detective was referring in his testimony to the "bloody sheets and bedspread" found in the room. The prosecutor asserted that the State would not waive the requirement that the motion be in writing, after which defense counsel informed the trial judge that until this point of the trial the defendant had no knowledge concerning the seizure of the sheets and bedspread. The prosecutor then argued to the court that there is no indication that an opportunity to file the motion was unavailable prior to trial and that the search was conducted four months prior to trial. The defendant's motion to suppress was denied. (At no point during this colloquy did the trial judge offer defense counsel an opportunity to place his motion in writing. No hearing was ever held on the merits of the motion to suppress.) At the request of defense counsel a hearing was held to determine whether defendant possibly could have had knowledge that the articles were taken from the hotel room. Defendant was the sole witness at that hearing and, according to his uncontradicted testimony, he was kept out in the hall during the entire search and was wholly unaware that articles were taken by the police other than the articles of clothing which they forced him to remove.

■■ From the evidence adduced at the aforesaid hearing we cannot say that there was an opportunity to file the motion to suppress prior to trial or that defendant was aware of the grounds for the motion. Therefore defendant's motion to suppress at this point in the trial, when reference was first made to the articles, was timely. While the statute states that "the motion shall be in writing," we believe that under circumstances such as appear in the instant case—where a timely motion to suppress is made during the course of the trial—it was not intended to require, nor is any useful purpose served in requiring, a trial judge to recess the trial to allow defense counsel to prepare in writing the substance of his oral motion to suppress. Where an oral motion to suppress is first made during the course of the trial, and is timely, we believe that it is discretionary with the trial judge as to whether counsel shall be required to reduce the motion to writing. In the instant case the trial judge did not require defense counsel to file a written motion. Nor did the trial judge indicate that the motion to suppress was in any way unclear or lacking in some substantive manner.

■■ Therefore, defendant's motion to suppress was properly before the court and a formal hearing should have been held thereon. If the articles in question were illegally seized, the evidence adduced at the trial with respect thereto was substantially prejudicial to the defendant and deprived him of a fair trial.

■■ Defendant also argues that various statements which he allegedly made to the police constituted confessions and therefore it was incumbent upon the court to conduct a hearing to determine the voluntariness thereof. The prosecution argues that these statements were admissions, not confessions, and as such do not require proof of their voluntary origin. The distinction between a confession and an admission was set forth in People v. Stanton, 16 Ill2d 459, 466, 158 NE2d 47:

79

A confession is a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred, while an admission is any statement or conduct from which guilt of the crime may be inferred but from which guilt does not necessarily follow.

Alleged statements by the defendant were that he was a sex maniac; "Help me, help me, I don't know why I did it, I must be nuts, help me" in response to Detective Serafini's question of "Ennis, what happened here tonight?"; and "Please help me, please help me" in response to the question "Do you want to tell us anything about tonight?" These alleged statements are not acknowledgments of guilt and therefore cannot be considered confessions. Defendant also refers to another statement allegedly made by him and testified to by Detective Serafini. However, no objection was made thereto and the issue cannot be raised for the first time on appeal. People v. Jones, 31 Ill2d 42, 198 NE2d 821. We find no merit in defendant's contention.

■■■■■■ Defendant further argues that an alleged photograph of the third-floor corridor of the Alto Hotel was erroneously admitted into evidence because a proper foundation therefor was not laid. In Brennan v. Leshyn, 51 Ill App2d 132, 139, 201 NE2d 167, the court set forth the necessary foundation for the introduction of a photograph:

In order to have a photograph admitted in evidence it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to the issue and verified by such witness on personal knowledge as a correct representation of the facts. The witness need not be the photographer, nor need he know anything of the time or condi-

80

tion of the taking, but he must have personal knowledge of the scene or object in question and testify that it is correctly portrayed by the photograph.

The photograph in the instant case was introduced into evidence on the basis of the testimony of Watson Johnson, who lived in a room on the third floor of the hotel. Among other testimony, he was asked the following question and gave the following answer:

> Mr. Nellis [prosecutor]: Is this a faithful and accurate picture of the third floor of the Alto Hotel?
>
> The witness: Yes, sir.

That testimony constitutes a sufficient foundation for the introduction of the photograph into evidence. Other testimony, elicited on cross-examination, which defendant contends impeaches the witness' positive identification of the photograph, would not affect the competency of the testimony. It is within the discretion of the trial judge whether to admit the photograph into evidence. We find that the trial judge properly exercised his discretion.

Defendant also contends that his cross-examination of Officer James Lewis was improperly restricted. Defendant argues that in restricting the cross-examination the court refused to allow him to thoroughly explore procedures used by police officers to preserve evidence taken from the defendant's room and from his person. A review of the record on appeal reveals that defense counsel was allowed extensive latitude in his cross-examination on this issue. Therefore, we find no merit in that contention.

### Holding on Appeal

We find that the defendant was proven guilty beyond a reasonable doubt. We also find that the court should

have conducted a hearing on defendant's motion to suppress. Therefore this case is remanded with directions to the trial court to vacate the judgment of conviction and conduct a hearing in accordance with this opinion. If the motion to suppress evidence is allowed, the trial court shall grant the defendant a new trial. If the motion to suppress evidence is denied, the trial court shall enter a new judgment of conviction.

Remanded with directions.

ENGLISH, P. J. and McCORMICK, J., concur.