THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK WARE, JR., *et al.,* Defendants-Appellants.

(No. 55770;

First District (5th Division)—April 19, 1973.

James J. Doherty, Public Defender, of Chicago, (Michael Weininger, Assistant Public Defender, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Cary A. Lind, and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

A jury found defendant, Frank Ware, guilty of both aggravated kidnapping and rape, and defendant, Elizabeth Ware, guilty of aggravated kidnapping and deviate sexual assault. Frank was sentenced to concurrent terms of 25-50 years for aggravated kidnapping and 10-20 years for rape. Elizabeth received concurrent terms of 20-30 years for aggravated kid-

napping and 7-14 years for deviate sexual assault. Frank Ware and Elizabeth Ware are husband and wife. Both defendants appeal.

The issues presented for review are as follows: Whether defendants were found guilty of each offense beyond a reasonable doubt, whether defendant, Elizabeth Ware, was denied her right to a speedy trial, and whether the defendants' sentences were excessive.

The State's case consisted of testimony of Chicago policemen, F.B.I. officers, and the two complaining witnesses Maryann Vani and Mary Leah Van Daele. The defendants produced no witnesses and chose not to testify. The facts, as established by the corroborating testimony of the two girls, are summarized.

Around midnight Sunday, August 3, 1969, the two girls met defendants near the "Old Town" area of Chicago. Since the girls would pass through Maywood, Illinois, on their way home, they offered defendants a ride there upon learning that defendants resided in Maywood. The four exited the Eisenhower Expressway at Homan Avenue upon defendants' request, proceeding to the rear of an apartment building. Frank Ware then pulled a gun and demanded the two girls park the car and enter a dark apartment.

In the apartment the defendants lit a single candle and forced the complaining witnesses to lie down on a mattress. The girls were ordered to sniff glue from a paper bag. When they refused, Frank punched Mary Leah in the stomach and Elizabeth slapped Maryann in the face to force compliance. After Frank left the apartment to get some beer and wine, Elizabeth ordered Mary Leah and Maryann to strip naked. Elizabeth also stripped naked. After Frank returned and removed all of his clothes, the two girls were ordered to drink wine, smoke marijuana, and dance in the nude. Then Elizabeth engaged Mary Leah in deviate sexual conduct, and Frank engaged Maryann in sexual intercourse. Both girls resisted the actions of the defendants.

The next morning Frank and Elizabeth discussed how to get a ransom, got details as to the girls' families, and then Frank went out of the apartment and upon his return told the girls he had made arrangements with their parents and that they would bring the money. He told the girls that he convinced their parents that if they gave trouble he would kill the girls, that when he got the money they would be released. During the morning the girls discussed tying sheets together for the purpose of escaping. When they stood next to the window, Frank yelled at them to get away. Maryann, accompanied by Elizabeth, left the apartment twice that morning. She phoned her mother to urge her to just bring the money and not notify the police because if she did, somebody would be hurt. Her mother knew about the ransom money because her mother had been

previously called by Frank, and her mother became hysterical on the phone. Her sister then got on the phone and said the money was ready. Although Mary Leah was alone in the apartment for a brief period of time, she was afraid to attempt escape because Frank had warned her of Black Panthers guarding the apartment. That day Frank engaged Maryann and Mary Leah in sexual intercourse, Elizabeth engaging Maryann in another act of deviate sexual conduct. The two girls were forced to drink "spiked" tea and submit to numerous injections with a syringe.

On the evening of August 4, 1969, Frank proceeded to the 4-Star and Alex Theaters to rendezvous with the parents of the two girls. He received the sum of $2000 from each parent. After the last exchange, he was arrested by the F.B.I. and the Chicago Police who had him under continuous surveillance. Elizabeth was arrested at approximately 9:00 P.M. as she left the apartment with Maryann and Mary Leah. During questioning, Frank acknowledged the sexual activity, but claimed that it occurred with the girls' consent. The girls admitted that they were physically unmarked, but claimed to have resisted the defendants' advances by yelling, pleading, crying, and, in one instance, biting the aggressor.

On September 10, 1969, the defendants were arraigned, both being represented by private counsel. On February 11, 1970, a new attorney, representing both defendants, replaced the original one. On May 25, 1970, the second attorney withdrew. On July 10, 1970, a third private attorney filed an appearance, and was granted leave to withdraw on the same date, the Public Defender replacing him. Both defendants, admittedly, were responsible for delays in the trial up until July 10, 1970 by reason of their filing a variety of motions. On August 28, 1970, an Amended Motion to Dismiss Charges was filed, containing the names of both defendants and the signature of Frank only. Hearings on the Motion to Dismiss were held on July 27, 1970 and August 24, 1970 on behalf of both defendants. Although Elizabeth did not address the court, she was present at all times and never expressed the slightest reservation about the proceedings. On November 13, 1970, Elizabeth filed a Petition for Discharge under Ill. Rev. Stat. 1969, ch. 38, sec. 103—5(a), alleging that the trial was delayed 126 days, and that she did not cause the delay. The trial began on November 19, 1970.

OPINION

■■■ Defendants' theory is that the girls consented to the sexual acts and the confinement and concocted the idea of ransoming themselves to their parents. The State has the burden to prove beyond a reasonable doubt that the act of sexual intercourse and deviate sexual conduct was performed forcibly and against the will of the victim. (*People v. De*

*Frates* (1965), 33 Ill.2d 190 N.E.2d 467; *People v. Sanders* (1967), 82 Ill.App.2d 159, 227 N.E.2d 79; *People v. Myers* (1968), 92 Ill.App.2d 129, 234 N.E.2d 811.) However, "useless or foolhardy" acts of resistance are not necessary. (*People v. De Frates* (1965), 33 Ill.2d 190, 194, 210 N.E.2d 467, 469.) In that case, the only evidence of danger was a statement made by defendant; "Shut up or I'll beat you." In the case at bar, the two girls were in a strange apartment, stricken with fear from a gun threat, slapped and punched by defendants, and forced to smoke marijuana, drink "spiked" tea, and submit to a syringe injection. Thus, under the *De Frates* standard, the State has met its burden. At any rate, the girls did resist most of the defendants' advances by yelling, pleading, crying, and, in one instance, biting the aggressor. These actions are inconsistent with the contention of the defense that the girls consented to the sexual acts.

██ Defendants' reliance on the lack of bruises or marks on the bodies of the two girls as tending to prove consent to the sexual acts is misplaced. In *People v. Pennington* (1966), 75 Ill.App.2d 62, 220 N.E.2d 879, the court sustained a conviction for rape even though no evidence of bruises or injuries existed.

 Defendants were convicted of aggravated kidnapping for secretly confining the two girls against their will, coupled with either the commission of a felony upon them, or with the purpose of obtaining ransom. (Ill. Rev. Stat. 1969, ch. 38, sec. 10—2.) The girls' lack of consent to the confinement is a necessary element to the aggravated kidnapping charge, as is their lack of consent to the sexual acts necessary to sustain conviction for the sex offenses. Defendants argue that since the girls were, for the most part, unaware of the presence of the gun after the initial threat to induce their entering the apartment, no sufficient showing of force was made to sustain either the aggravated kidnapping or sex offense convictions. We feel that the mere knowledge that the gun was present in the apartment coupled with the early display of willingness to use it by Frank Ware was sufficient to instill fear in the two victims. With this existing fear, no further specific threats need be proved, only an unwillingness on the part of the victims, certainly proven here (see *supra*).

██ Defendants also argue that the two girls had opportunities to escape, their failure to do so indicating a desire to remain in the company of defendants. The prosecution points out, that all the alleged opportunities occurred after the three charged crimes were consummated. However, if the girls did in fact have a clear opportunity to escape and showed no desire to do so, defendants' contention that the entire chain of events occurred with the consent of the girls would become believable. We do not find that a clear opportunity to escape existed. Mary Leah

testified that the two girls discussed sticking together to avoid harm. On all but one occasion, when Maryann left the apartment accompanied by one defendant, the other defendant guarded Mary Leah. Thus, Maryann had reasonable cause to fear for the safety of Mary Leah, left behind. On one occasion, Mary Leah was left alone in the apartment. She testified to a fear of Black Panther "guards" watching the place, as Frank Ware had warned her. At any rate, Mary Leah certainly had good reason to fear for the safety of Maryann should the former escape.

■■■ Since defendants offered no proof to support their defense that the two girls concocted the kidnapping scheme, we need not consider it here. The testimony of each girl was entirely consistent with and fully corroborated the testimony of the other. Defendants, exercising their privilege not to take the stand, introduced no evidence to contradict the girls' testimony. Accordingly, we find that the defendants were proven guilty beyond a reasonable doubt of the crimes as charged.

Defendant, Elizabeth Ware, contends that from July 10, 1970 until the filing of the petition for discharge on November 13, 1970, she did not cause a delay in her trial and demands her discharge pursuant to Ill. Rev. Stat. 1969, ch. 38, sec. 1035(a).[1] She alleges that the court never addressed her personally, treating Frank and her as one person. Elizabeth argues that her husband, Frank, caused all the delays after July 10, 1970, by filing and arguing motions without her consent. However, the record clearly indicates that Elizabeth joined Frank on all motions filed and appearances entered. Even though only he signed each document, her name along with Frank's appears on each. The record indisputably shows that Elizabeth was present at all times on July 27 and August 24, 1970 when the motions were heard in court. On the latter date, when she did not appear in court, the judge inquired about her absence and delayed the proceedings until she was present.

■■ The following conversation in court on August 24, 1970 is further evidence of the court's concern for her rights:

"THE COURT: What about your wife?

FRANK WARE: If she goes down, I will take her down. I won't sell her out.

THE COURT: You are exercising influences on her. Don't you thing this woman is entitled to a defense?

FRANK WARE: Well, Your Honor, she is an intelligent woman. I think she understands what is going on here * * *."

---

[1] Section 103—5(a) provides in part:
"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *."

While this conversation and all others were taking place in her presence, Elizabeth never objected that her rights were being violated. Nothing in the record shows that Frank was acting only on his own behalf during the period in question. Therefore, we hold that Elizabeth is charged with all the delays caused by her husband, and Ill. Rev. Stat. 1969, ch. 38, sec. 103—5(a) is fully complied with. In addition, since the petition for a new trial did not contain this discharge argument, we need not consider it on appeal. *People v. Irwin* (1965), 32 Ill.2d 441, 443, 207 N.E.2d 76, 78; *People v. Hairston* (1970), 46 Ill.2d 348, 366-7, 263 N.E.2d 840, 851-2.

■■ Finally, the sexual activities forced upon the two unwilling victims were so revolting that this court omitted many of the details from this opinion. The sentences for each offense are well within the statutory limits. The trial judge had an opportunity, superior to ours, "in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed * * *." (*People v. Taylor* (1965), 33 Ill.2d 417, 424, 211 N.E.2d 673, 677; *People v. Adams* (1969), 113 Ill.App.2d 205, 220, 252 N.E.2d 35, 43.) Even though defendants had no prior criminal record, we do not feel that this is an appropriate case for this court to exercise its power to reduce the sentences in respect to either defendant.

The judgments are affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.