THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER PATTERSON, Defendant-Appellant.

Third District   No. 78-372

Opinion filed December 12, 1980.

STOUDER, J., specially concurring.

Patrick J. Hughes, Jr., of Springfield, and Robert Agostinelli, of Ottawa, and Gary K. Morgan, law student, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant Chester Patterson was charged by indictment in the Circuit Court of Will County with the offense of rape. Following a jury trial, he was convicted of rape and sentenced to a 15-year determinate prison term.

Defendant has presented eight issues for review:

1. Whether the defendant was proven guilty beyond a reasonable doubt?

2. Whether in denying the defendant's requests for a directed verdict, the trial judge misapplied the law concerning the standard of proof in rape cases?

3. Whether the defendant was deprived of a fair trial by the trial judge improperly restricting the testimony of a defense witness who was present at the lineup where the complainant expressed doubt as to her ability to identify the defendant?

4. Whether the trial judge erred in denying the defendant's motion to strike the in-court identification because the identification was based upon suggestive police procedures and was unreliable?

5. Whether the trial judge erred in denying a mistrial motion after the prosecutor referred to the defendant as 'Chester the Molester' on a courthouse elevator in the presence of a juror in the case?

6. Whether the trial judge deprived the defendant of a fair trial by informing the jury that the case involved a 'black on white rape'?

7. Whether the court erred in failing to admonish the jury that the prior inconsistent statement of a hostile witness was to be used only in judging his credibility and not as substantive evidence?

8. Whether the trial judge abused his discretion in sentencing the defendant, a youthful first offender with a good background, to a 15-year determinate sentence.

The defendant Patterson allegedly raped Susan Dome on January 3, 1978. The victim testified that she was abducted at gunpoint as she walked through the parking lot at Joliet East High School. She reported that she had arrived at the parking lot for her 11:15 a.m. class but did not recall seeing the security guard who was normally on duty. Walking through the parking lot she noticed a black male whom she did not know sitting in a car. As she walked by the car, which she later described as a red Ford Galaxy 500 XL, the black male spoke to her but she ignored his comment and continued to walk toward the school. Susan Dome then testified that this same person came up from behind her, grabbed her arm and turned her around. He had a pistol and ordered her to walk to his car. Her assailant was wearing a red and gold jacket with an Indian head emblem on one side and the letter "M" on the other.

The complainant testified that when they reached the car the assailant pushed her in on the driver's side. The complainant was made to sit on a console between the front bucket seats of the car.

The car left the parking lot and after a drive of about 10 minutes arrived at a location on Rowell Avenue in Will County. The complainant was told to remove her clothes and lie down so that she was facing toward the front of the car with her head resting on the back seat. The assailant then drove around for 30 or 40 minutes.

Ms. Dome's testimony indicated that the assailant kept the handgun between his legs during the entire time he was driving. She also stated that he drove with one hand most of the time.

The complainant said she was familiar with the area and could tell where she was even though she was lying down. The car eventually stopped at approximately the same location where she had earlier been told to disrobe. At this point the complainant was allegedly raped. She testified that she offered no resistance. She stated that she did not think that the assailant ejaculated during the act of intercourse, which she estimated to last between five and 15 minutes.

After the intercourse the complainant put her clothes back on. The assailant then drove her back to the high school and let her out of the car. On the way back he told her that he was not from the area but that he had a friend who was and he would find out if she told on him. She arrived back at the school between 12:12 and 12:30 p.m.

Susan Dome testified that after leaving the car she went to the high

school dean's office and asked to use the phone. She did not tell the dean what happened even though he asked her if anything was wrong. She called her mother who then came to the school. The principal was informed and the police notified. Susan Dome was then taken to a hospital for an examination.

During the entire incident Ms. Dome testified that she did not scream or resist her attacker.

Defendant was arrested wearing a jacket and a jumpsuit matching the description provided by the complainant. An automobile similar to the one she described was also impounded from the owner who lived across the street from the defendant. The defendant allegedly admitted to police that he had been in the area of the school parking lot on the day of the rape.

The victim identified the defendant's jacket as similar to the one worn by her attacker. At the trial, Patterson, in addition to denying committing the crime, denied admitting his presence in the school parking lot on the day in question. Defendant stated that he did not attend school that day and among the other things he did he helped his neighbor work on the impounded car. Patterson testified that on the day of the alleged rape the car in question had no power steering and bad brakes. He did admit, however, to driving the car around the block that day.

The victim had been shown a photographic lineup with defendant's picture included three days after the rape and at that time she expressed some concern as to her ability to identify the defendant as her assailant but reported that defendant was the individual who most closely resembled her attacker. A week after the rape the victim viewed a live lineup and although again expressing some doubt identified the defendant as the one most closely resembling the rapist. At this time she indicated on a written form that the defendant "looked the closest." Despite some degree of pretrial doubt, the victim positively identified the defendant at the trial as the rapist.

In addition to the defendant and the victim, several other witnesses testified to significant facts regarding the various issues on appeal. Dr. Ladislaw Lukacisak, the emergency room physician who examined the victim, in summary testified that no medical evidence was present to support a claim of either rape or sexual intercourse, although he admitted on cross-examination that sexual intercourse could occur without trauma. Michael Podlecki, a forensic serologist and chemist, testified with regard to three Negroid hairs found on the victim's sweater. He stated that the pubic hairs were dissimilar in color and characteristics from the comparison standards taken from defendant Patterson. Found in the impounded vehicle was a gasoline can similar to the one described by the

victim. Police Officer Louis Silich, an evidence technician, testified that he examined the impounded car for latent fingerprints and found no prints at all. The record also reflects that the impounded vehicle was driven into the police garage and was consequently drivable despite the contrary testimony of defendant indicating otherwise.

Defendant's initial argument is that he was not proved guilty beyond a reasonable doubt. As a reviewing court we are charged with the duty to carefully examine the evidence in rape cases, and if the evidence does not remove all reasonable doubt of the defendant's guilt and create an abiding conviction that he is guilty of the crime charged, we must reverse. *People v. Faulisi* (1962), 25 Ill. 2d 457, 185 N.E.2d 211.

Defendant's theory of insufficient evidence of his guilt is many-facetted. He first claims that the complainant's identification of him was not clear and convincing. The uncorroborated testimony of the victim in a rape case must be clear and convincing to support a conviction. (See *People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344, and *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375.) The testimony of the victim in the case at bar was clear and convincing. She had an excellent opportunity to view the defendant close at hand for sufficient time to identify him. The details of the rape brought forth during the trial—the defendant's clothing, the car, the gas can in the back seat, the course of their journey into the countryside, and the time which they left and returned—certainly corroborate her version of the incident. Similar testimony which was also not doubtful or uncertain was held to be sufficient to sustain a rape conviction in *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317. The defendant contends that the evidence otherwise does not corroborate the victim's testimony, resulting in it becoming unclear and unconvincing. (*People v. White* (1962), 26 Ill. 2d 199, 186 N.E.2d 351.) We disagree. The evidence in the record sufficiently lends credence to the complainant's testimony, which was detailed, certain, and free from doubt.

■■ As to the defendant being the man who raped her, the adequacy of the victim's identification of the defendant is properly a question for the jury and we will not upset the jury's determination of that factual issue unless the evidence as a whole is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 275.) We believe the evidence here is not so unsatisfactory. The defendant's contention, that the victim's uncertainty prior to trial to definitively pick out the defendant at a photographic lineup and a live lineup should destroy her otherwise positive in-court identification, is without merit. These added facts only affect the credibility of the victim, which is an issue of fact ultimately decided against the defendant by the jury's guilty verdict.

■■ Another aspect of the issue of whether there was sufficient proof of guilt beyond a reasonable doubt is the defense theory that the victim's testimony of sexual intercourse is uncorroborated. Defendant relies upon the testimony of Dr. Lukacisak, who examined the victim after her complaint of the rape. The physician concluded that no medical evidence was present to prove that intercourse by force or otherwise had occurred. He also testified to the lack of any results of physical trauma on Ms. Dome's body. Consistent with that medical testimony is the victim's testimony that she did not physically resist her attacker and that the defendant, although achieving penetration, did not ejaculate. The victim's entire testimony contains many details and specifics which corroborate her not physically resisting the armed defendant because of her fear of his harm to her person. Defendant has relied upon *People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467, for support of his argument that the lack of positive medical evidence raises a reasonable doubt of his guilt. The error recognized by our supreme court in *DeFrates* was the failure of the police to send the rape victim for a medical examination to corroborate the rape. The case is very clearly factually distinguishable from the case at bar, where the victim received the medical examination but the results were not conclusive to corroborate the occurrence of the rape. Even where there is no medical evidence of rape, the victim's testimony of nonconsensual sexual intercourse with penetration being achieved will support a rape conviction unless that testimony is unbelievable as a matter of law. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) The victim does not have to physically resist for a rape to occur. (*People v. Sweeney* (1977), 46 Ill. App. 3d 858, 361 N.E.2d 344.) The lack of physical resistance explains the lack of trauma reported by the examining physician. Upon examining the record we believe that the victim's testimony was corroborated by the detail of her version as to the description of the defendant, his clothing and the car involved. Her testimony was not unbelievable as a matter of law. Sufficient evidence was presented to prove defendant guilty beyond a reasonable doubt despite the lack of positive medical evidence to corroborate the rape.

Defendant's third form of attack upon the sufficiency of the proof of his guilt is directed toward the inability of the State's evidence technician to link three Negroid pubic hairs found on the Caucasian victim's sweater to the defendant. Although the comparison test of hairs found with hair standards of the defendant is only used as a means of excluding potential defendants rather than as a means of positive identification, the results tended to exclude the defendant. During cross-examination, the same witness admitted that different hairs from the same part of the body can appear to be dissimilar. The evidence technician was unable to absolutely exclude the defendant Patterson as the origin of the three hairs discovered

on the victim's sweater, but could only exclude the particular hair standard taken from defendant as being dissimilar to those discovered on the sweater. The testimony of Ms. Dome substantiates the lack of similarity between the three hairs discovered and the standards taken from defendant. The victim was told to remove her clothes and upon doing so placed them, including her sweater, on the front passenger seat. The hair transfer could reasonably have come from anyone who had previously been in contact with that seat. Furthermore, the act of intercourse took place with the victim straddling the center console with her head toward the rear of the car. No evidence indicated that the defendant ever came into direct contact with the sweater. These additional facts lessen the importance of the findings that three Negroid pubic hairs found on the victim's sweater were dissimilar to the hair standards taken from defendant Patterson. Again the result of this evidence, even if considered favorable to defendant, at best merely affects the credibility of the victim but does not raise a reasonable doubt of the defendant's guilt.

Defendant also bases his argument of the existence of reasonable doubt of his guilt upon the testimony of the school parking lot security guard, Merril Widner. He testified that he was acquainted with the victim Susan Dome and knew what her car looked like. He also testified that he did not see the victim's or the defendant's car come or go during the time of the alleged abduction. He also stated that he was present in the parking lot during the relevant time periods. This testimony was impeached by his own prior inconsistent statement that he had arrived at the lot at a later time, a time after the alleged abduction could have taken place. Defendant's reliance on the testimony of the security guard is further weakened by the victim's testimony that she did not see the guard upon her arrival at the parking lot. The defendant's argument based upon the weak and conflicting testimony of the parking lot security guard has not convinced us that his guilt was not established beyond a reasonable doubt.

The defendant's last attack upon the sufficiency of the evidence of his guilt centers upon his contention that the Ford Galaxy 500 automobile impounded by the police and in which the rape allegedly occurred was in such a state of disrepair on the date of the incident as to raise serious doubts about the victim's testimony. The assertions of the defendant that the automobile had no power steering, bad brakes, and was barely operable does conflict with parts of the victim's version of the rape. However, the defendant admitted to the police that he had driven the car in the area of Joliet East High School on the day of the incident in question. He further admitted to driving the same Ford automobile on the evening of the alleged rape. The owner of the car, Percy Tucker,

testified that the car could be driven and was driven by defendant as late as January 2, 1978, the day before the alleged crime. A police officer also testified that the so-called inoperative vehicle was actually driven into the police garage from a tow truck after it was impounded and moved by police while in the garage. At that time the police officer did not notice anything unusual about the steering of the vehicle. In summary, the defendant has based his argument of the existence of a reasonable doubt of his guilt upon an isolated fact that is questionably favorable to him. When the evidence is viewed as a whole we believe the evidence proved defendant's guilt beyond a reasonable doubt.

The testimony of the victim was clear, convincing and free from doubt. She was unshaken during cross-examination, and her version was substantially corroborated by other evidence. Although her testimony was in conflict with evidence presented in defense, the jury's determination of guilt was not manifestly erroneous and must be affirmed.

■■ The second issue presented is whether error occurred in denial of defendant's motion for a directed verdict of not guilty both at the end of the State's case in chief and renewed at the close of all the evidence. While we agree with defendant that courts must more carefully scrutinize the evidence in a rape case than in any other type of case, pursuant to *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 281, we believe the defendant's failure to raise the issue of alleged error in denying his motion for a directed verdict in his written post-trial motion for a new trial amounts to a waiver of that issue on appeal. (*People v. Cook* (1979), 78 Ill. App. 3d 695, 397 N.E.2d 439; *People v. Gray* (1976), 40 Ill. App. 3d 52, 351 N.E.2d 339.) As we indicated previously the testimony of the victim in this case was clear and convincing and was corroborated by other evidence, and since the truth of the evidence introduced by the State is admitted by the defendant's motion for a directed verdict, the case is clearly one wherein reasonable minds might differ. Therefore the factual issues were quite properly left to resolution by the jury, and denial of the motion for directed verdict did not amount to plain error so as to avoid the defendant's waiver of the issue.

■■ The third issue presented is whether the trial court erred in restricting the defendant's impeachment of the victim's positive in-court identification of the defendant by limiting the questions asked of the public defender present at the live lineup where the victim stated, "[I]t might be number three, but I don't think it was. * * * Number three is the only one who looks like him, but I don't think it's him." The victim was extensively cross-examined and admitted some uncertainty prior to trial in identifying the defendant as the rapist. From the defendant's offer of proof we determine that the testimony excluded by the trial court was at most cumulative. A lengthy discussion occurred following the offer of

proof between counsel and the trial judge. It was ultimately concluded that the only impeaching statement for which defense counsel had properly laid a foundation in cross-examining the victim was: "On January 13, did you hear her tell the officer, it may be number so and so, but I don't think it was?" The defense counsel, however, declined to ask that question or to introduce that evidence at the trial. We deem the refusal of counsel to ask the impeaching question allowed by the trial court to be asked, constituted his abandonment of the issue and a waiver of the issue on appeal. A defendant may not acquiesce or participate in the introduction of error in the record and then object on appeal. *People v. Burage* (1961), 23 Ill. 2d 280, 176 N.E.2d 389; *People v. Cook* (1979), 78 Ill. App. 3d 695, 397 N.E.2d 439.

■■ Defendant next argues that the trial court erred in denying his motion to strike the victim's in-court identification because the identification was unreliable and based upon suggestive police procedures. Specifically the defendant claims that the police engaged in suggestive conduct at a photographic display held three days after the alleged incident and again at a live lineup held one week later. The victim on both occasions identified the defendant as resembling the rapist, but her identification was not positive. The conduct defendant complains of consisted of the police instructing the victim to sign her name on the back of the picture resembling her assailant and recording the fact on a police form that the defendant was the one man in the lineup that looked the closest to the rapist. This pretrial uncertainty of the victim's identification of the defendant was known to defense counsel. These grounds for the motion to strike the victim's in-court identification were known to defense counsel, and an assistant public defender was physically present at the allegedly suggestive lineup. A motion to suppress an eyewitness in-court identification should be made before trial unless the opportunity to so move did not exist or defendant was not aware of the grounds for such a motion. (See Ill. Rev. Stat. 1977, ch. 38, par. 114—12(c); *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747.) The defendant, here, did not file a pretrial motion to suppress the victim's identification of defendant, when the grounds therefore were surely well known to his appointed counsel who as aforesaid was present on one occasion when the suggestive police practices allegedly occurred. Instead, defense counsel waited until after the victim had positively identified the defendant at the trial before he moved to strike the testimony. His motion was untimely, as the record indicates his awareness of the grounds and an opportunity to file a pretrial suppression motion. Accordingly defendant has waived the issue on appeal. Ill. Rev. Stat. 1977, ch. 38, par. 114—12(c); *Bracy*.

■■ The defendant has also claimed that error occurred in the denial of his motion for a mistrial after the prosecutor inadvertently referred to the

defendant as "Chester the molester" in a courthouse elevator in the presence of one member of the jury. The juror was in the elevator after lunch and did not have his juror button on. The prosecutor's statement was made in response to another individual as to the case he was then trying. We readily acknowledge that the comment, even though inadvertent, was prejudicial to the defendant. However, the prejudice was cured, and the motion for mistrial was properly denied.

The one juror who heard the statement immediately informed the prosecutor of his status as a juror. The trial judge was then informed of the situation and voir dired the juror. The juror indicated that he believed the remark would have no effect on his deliberations. Juror Graves also stated under oath that he had not told any other member of the jury of the statement. No evidence was presented to contradict juror Graves that the rest of the jury was even remotely aware of the statement. The defense failed to ask for the rest of the jury to be voir dired. Although the trial court concluded that there was no showing of prejudice to the defendant and denied the defense motion for a mistrial, he did grant a defense motion to have juror Graves removed from the panel and replaced by an alternate. This action, in our opinion, cured any prejudice to the defendant caused by the unfortunate and improper statement by the prosecutor so that the granting of a mistrial motion to cure the error was not necessary for defendant to receive a fair trial. Defendant has relied upon several cases where clearly prejudicial newspaper articles were read by members of the jury and formed a sufficient basis for the granting of a mistrial. (*People v. Keegan* (1971), 52 Ill. 2d 147, 286 N.E.2d 345; *People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61.) The prejudice in each case was susceptible to cure only by ordering a mistrial. In the case at bar the prejudice was cured by the removal of the one juror who heard the prejudicial statement and replacement by an alternate juror before the prejudice had a chance to touch the entire panel. We believe the cure in the present case was sufficient to remove the prejudice and that ordering a mistrial was not necessary.

■■ The sixth issue presented by defendant is whether he was deprived of a fair trial by another comment made to the jury. This statement was that of the trial judge who told the jury following their being sworn and prior to receiving any evidence that the case involved a "black on white rape." Defendant argues that this statement prejudiced the jury because of its tendency to cause the jury to view the forthcoming evidence in an adverse light to him. He has also complained that the statement in question was a comment upon the evidence pertaining to a controverted issue in the trial. (*People v. Marino* (1953), 414 Ill. 445, 111 N.E.2d 534; *People v. Kelly* (1931), 347 Ill. 221, 179 N.E.2d 898.) In this case the trial judge made the statement in introduction of the case and the emphasis

defendant places upon the statement is totally weakened when it is read in context. The remainder of the statement not objected to by defendant informed the jury of general law and the jury's function. Read in context the statement complained of was not a comment upon the evidence but was merely an introduction to the type of case and a verbalization of what was before the jury's eyes in the person of the defendant, the victim, and the type of case. The defendant also failed to preserve the alleged error by not including the issue in his written post-trial motion and has accordingly waived the issue on appeal. *People v. Gray* (1976), 40 Ill. App. 3d 52, 351 N.E.2d 339.

The seventh issue defendant argues is whether the trial court erred in failing to admonish the jury that the prior inconsistent statement of a hostile witness was to be used only in judging his credibility and not as substantive evidence. At the trial the State presented Don Williams, who testified to spending substantial portions of January 3, 1978, with defendant. To the State's surprise on rebuttal Williams testified to seeing defendant at 11:45 a.m. on January 3, 1978, contrary to an earlier statement given to police that he had seen defendant after noon on that day. The court declared Williams to be a hostile witness and the State introduced his prior inconsistent statement as impeachment. Defendant failed to request a jury instruction that the jury should view the witness' prior inconsistent statement only for purposes of impeachment and not as to the truth of the substance of that prior inconsistent statement. The trial court did not give an appropriate instruction *sua sponte*, and the defendant also failed to raise the absence of an appropriate instruction in his written post-trial motion.

██ It is well settled that the giving of a jury instruction limiting the use of the evidence to impeachment only under the circumstances would have been correct and should have been given under the facts of this case. (*People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804; *People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611.) The purpose of impeachment is to destroy credibility and not to prove substantive facts. (*People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169; *People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625.)

> "[T]he whole import of our many decisions in this area is that every reasonable precaution should be observed by judges and lawyers to insure that prior inconsistent statements are used only for impeachment purposes and not improperly emphasized to the point that they will be viewed by the jury as substantive evidence. Courts should be alert to see that limiting instructions are given and particular care is necessary where the prior statement bears directly on the defendant's guilt or innocence. In those situations it is evident that undue repetition or emphasis will be highly preju-

dicial. But at the same time, basic to our system of justice is the axiom that no witness, whether called by a party or the court, should be permitted to lie, and impeachment by prior inconsistent statements, when properly and fairly accomplished, has always been and remains a permissible means of demonstrating that he may have done so." (*People v. Bailey* (1975), 60 Ill. 2d 37, 58-59, 322 N.E.2d 804, 816 (Ryan, J., and Underwood, J., dissenting).)

The failure of the defendant to request or tender an appropriate jury instruction results in a waiver of the claimed error on appeal. (*People v. Taylor* (1975), 27 Ill. App. 3d 849, 327 N.E.2d 504.) Additionally the defendant's failure to allege the error in not giving a limiting instruction on the use of the impeaching evidence in his post-trial motion amounts to a waiver of the issue on appeal. *People v. Gray* (1976), 40 Ill. App. 3d 52, 351 N.E.2d 339.

■■ The last issue defendant has argued is whether the 15-year determinate sentence imposed upon him was an abuse of discretion. The defendant was a youthful first offender and arguably with a clean background. The presentence report indicated that the victim suffered great emotional and psychological harm as a result of the rape. The defendant used a dangerous weapon during the commission of the rape, and his conduct threatened and caused serious harm to the victim. The rape occurred in broad daylight, the defendant and victim were strangers, and the victim was abducted from a high school parking lot. From all these facts the trial court was correct in concluding that a sentence of imprisonment was necessary to deter others from committing the same crime, and under similar facts similar length sentences have been approved for the offense of rape. (See *People v. Ware* (1973), 11 Ill. App. 3d 697, 297 N.E.2d 289; *People v. Fortson* (1969), 110 Ill. App. 2d 206, 249 N.E.2d 260.) Since the recent decision of our supreme court in *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the law of Illinois has been clarified: A reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion. We find no abuse of discretion here and accordingly the sentence is affirmed.

The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

While I agree with the result reached by the majority, I believe that the issue of whether or not the trial court erred in denying defendant's motion to strike the witness' in-court identification should have been

decided on the merits rather than procedurally. The majority holds that because the defendant did not move to suppress the eyewitness identification prior to trial the defendant's motion was untimely and, therefore, there was no error in denying it. I believe this analysis is improper for three reasons.

First, the State waived any objection to the timeliness of the motion. The trial court ruled on the motion on its merits, and there is no evidence in the record that the State ever objected to the motion on the ground that it was untimely. In view of this failure to object, the State has clearly waived this point and may not raise the issue for the first time on appeal. As a consequence, the majority cannot dispose of the issue on procedural grounds and should decide the issue on its merits.

However, regardless of whether or not the State waived the issue of timeliness, the test adopted by the majority for determining timeliness requires a finding that defendant's motion was in fact timely. The majority adopts the test stated in *People v. Bracy* (1973), 14 Ill. App. 3d 495, 501, 302 N.E.2d 747, in which the court held that under section 114—12(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(c) "[a] motion to suppress eyewitness identification must be made before trial unless the opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." The majority contends that since the pretrial uncertainty of identification and suggestive police practices were known to defense counsel prior to trial, defendant was obliged to move to suppress the identification prior to trial.

While I believe the rule in *Bracy* is the proper one, the majority has misapplied it in the present case. Had the defendant known prior to trial that the witness would be able to make a positive identification, he might have been required to make the motion prior to trial. However, in the present case, defendant could not know prior to trial that the witness would make a positive in-court identification. At the photo showup and the lineup prior to trial the witness was unable to positively identify the defendant as the perpetrator of the crime. Thus defendant had no way of knowing before the trial that the witness would make a positive in-court identification. In the absence of such knowledge, defendant cannot be required to make a pretrial motion.

The rule in *Bracy* contains the exception that where defendant has no opportunity before trial to move to suppress, then a motion made during the trial is timely. Until the witness made her positive in-court identification, there was nothing to suppress. Therefore, defendant could not move to suppress prior to trial and such a motion made during the trial was timely if made as promptly as the circumstances of the individual case allow. (See *People v. Thomas* (1967), 88 Ill. App. 2d 71, 232 N.E.2d

259.) In the instant case defendant objected immediately after the identification was made. Thus, under the rule in *Bracy* the motion was timely made and should be considered on its merits.

The final reason for deciding the defendant's motion on its merits is that the trial court decided the issue on its merits. Disregarding the fact that the State waived any procedural objections it may have been entitled to raise, where the trial court decided the issue on its merits I can see no reason for disposing of it on a procedural ground. To dispose of a case on a claimed procedural deficiency when the record contains adequate information to resolve the issue on its merits is to invite trouble unnecessarily. In the instant case, to insist that the motion to suppress must be made prior to trial means that in the future any defendant whose attorney failed to make such a motion might request a new trial on the grounds of ineffective counsel. I can see no reason to invite this problem where the record is adequate to permit us to decide the question on its merits.

Despite the fact that for the above mentioned reasons I believe the issue of suppression of the in-court identification should have been decided on the merits rather than on procedural grounds, it would serve no useful purpose to discuss the merits of the issue in a separate opinion and, therefore, I concur in the result.