(No. 36968.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT HAL, Plaintiff in Error.

*Opinion filed September 28, 1962.*

McCOY, MING & LEIGHTON, of Chicago, (GEORGE N. LEIGHTON, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant herein, Robert Hal, was indicted, tried by jury and convicted of the crime of murder in the criminal court of Cook County, and sentenced to imprisonment in

the penitentiary for a term of 199 years. The case comes to us on writ of error to review the judgment.

Defendant's allegations of trial error include the manifestation of prejudice by the judge against the defendant, the admission of prejudicial evidence of statements by decedent's wife made outside defendant's presence, the admission of statments made during coverture by the defendant to his wife, permitting the jury to hear evidence of an alleged confession which the court later refused to admit, that defendant's conviction was secured through the use of known perjured testimony by the State, and the insufficiency of the evidence to prove the guilt of the defendant beyond a reasonable doubt.

In view of the result we reach, it is unnecessary to relate the facts in detail. Suffice it to say that the case is a fantastic one in which the defendant allegedly murdered the decedent at the request of decedent's wife, by beating him about the head with a hammer in an apartment in which the decedent, his wife, defendant and his wife, and several unrelated individuals lived in close proximity to each other. Following the alleged beating, which occurred in the early morning, defendant hid the body under a bed until nightfall when he supposedly placed it in a borrowed car, dumped it in the street some distance away and then ran the car back and forth over the body several times to make it appear to be a "hit and run" death, and it was classified as such by the police.

The chief witness for the prosecution was defendant's wife who made no complaint regarding her husband until May 24, 1952, although the decedent was killed on February 7, 1948. Her reasons for remaining silent were that decedent's wife had threatened to involve defendant's wife if she ever revealed the facts, and defendant had threatened his wife's life. Decedent's wife died in 1949 and defendant had been imprisoned a portion of the time subsequent to 1949. There was much conflict in the testimony of the wit-

nesses, and the essential question became one of the degree of credibility to be accorded the several persons who testified.

Of the errors alleged to have occurred in the trial court, we need consider only one. Near the conclusion of the People's case, testimony was offered relating to certain statements made by defendant indicating his participation in the killing, whereupon, defendant objected to the admission of such statements on the ground that they were obtained by duress in the form of beatings. The jury was excused, and the court heard testimony as to the facts surrounding the making of the statements. Upon completion of this preliminary proof, the court overruled the objection, indicating he would admit the statements, but saying: "I will say to you frankly, I am not too strongly impressed with the validity of those statements, but at the same time I think the jury are entitled to see the statement. . . . He said he was beaten, and I don't believe it. I am saying frankly, that it's a very, very close question as to whether or not this statement should be admitted."

Thereafter, the jury was recalled, and the State proceeded to call an assistant State's Attorney who testified to being present when a statement was made by defendant to the police. This witness further stated the statement was later transcribed by the reporter who took it, but that defendant then refused to either read or sign it. A police officer then testified to several conversations with defendant and to the taking of the written statement which defendant subsequently refused to sign. People's exhibit 3 was identified as this statement. This occurred on Friday afternoon, and court adjourned to Monday A.M. Over the week-end defense counsel apparently discovered that defendant had been before the trial judge on a preliminary hearing in the instant case when the judge had been sitting in felony branch of municipal court, and when court reconvened on Monday morning, the lawyer who had represented defendant at the

preliminary hearing was present. The trial judge recalled that at the preliminary hearing defendant claimed he had been beaten, was holding his groin, and that the judge had then stated defendant should be given a physical examination. Having had his recollection refreshed in this manner, the trial judge reversed his ruling on the written statement, and declared it would be excluded from evidence. The jury was instructed to disregard any evidence relating to the statement, and the case proceeded to verdict.

Defendant now argues that the prejudicial effect of the testimony relating to the written statement could not be removed by a simple instruction to disregard it. We agree. This is not the usual situation in which a witness makes an inadvertent comment or perhaps answers an improper question following which the jury is instructed to disregard the testimony. Here we have an assistant State's Attorney and a police officer identifying and giving a substantial amount of testimony before the jury with reference to a statement by defendant which the court subsequently rules cannot go to the jury. In view of the volume of testimony here involved, we do not believe the court could erase from the minds of each juror all recollection thereof or reference thereto.

Where, as in this case, the jury's responsibilities include not only the determination of guilt or innocence, but also the punishment to be imposed, it becomes doubly difficult to assess the impact of testimony improperly permitted to be heard by the jury. The factual situation is bizzare, and in view of the closeness of the case upon the evidence and the severe penalty assessed, which could have been influenced by the error which occurred, we are of the opinion that a new trial is required. (*People* v. *Oden,* 20 Ill.2d 470; *People* v. *Donaldson,* 8 Ill.2d 510; *People* v. *Marino,* 414 Ill. 445; *People* v. *Kirkendoll,* 415 Ill. 404.) Of the other errors alleged, it seems unlikely that any will recur upon a new trial except those involving statements by the wife of de-

cedent made outside the presence of defendant. These were admitted as declarations of a co-conspirator, and we deem it appropriate to call attention to the fact that only such declarations as may fairly be said to be in furtherance of the conspiracy are admissible under this rule. *Spies* v. *People,* 122 Ill. 1, 229; *People* v. *Looney,* 324 Ill. 375; *People* v. *Williams,* 8 Ill.2d 140; *People* v. *Tucker,* 21 Ill. App. 2d 46, affirmed 18 Ill.2d 103, *certioraire* denied, *Tucker* v. *Illinois,* 362 U.S. 950, 80 Sup. Ct. 860, rehearing denied, 362 U.S. 992, 80 Sup. Ct. 1075.

The judgment of the criminal court of Cook County is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*