People of the State of Illinois, Plaintiff-Appellee, v. James Nelson and Robert E. Jackson, Defendants-Appellants.

Gen. Nos. 53,336, 53,412.

First District, Fourth Division.

May 13, 1970.

Rehearing denied July 1, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard E. Zulkey, Assistant State's Attorneys, and Robert Kelty, Special Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

By a joint indictment, defendants were charged with burglary. A jury convicted them and the court sentenced each to serve five to fifteen years. In this appeal, defendants contend that (1) evidence in the record did not prove existence of the corporation named in the indict-

ment as the owner of the burglarized premises; (2) defendants' constitutional rights were violated by admission in evidence of testimony concerning a statement allegedly made to a police officer by a co-defendant who was not on trial and who did not testify; and (3) the final argument of the prosecutor was prejudicial.

In the evening of December 29, 1967, Robert Schmidt, dressed in a police uniform, was on duty as a security officer for "[S]ears and Roebuck . . ." at its warehouse, 2065 George Street, Melrose Park, Illinois. Part of the warehouse was a receiving dock with overhead doors numbered 1 to 26. Sometime that evening, Schmidt checked all the doors and found them locked. At about 7:30 p. m., Schmidt saw a hat and a gray coat inside the building. He touched them; they were cold. Then, looking toward Door No. 4, Schmidt saw a man carry a sewing machine to a white 1960 Ford four-door sedan that was parked near the receiving dock. The lighting condition of the area was "very good"; there were six poles of mercury vapor lamps. Schmidt saw the man put the sewing machine on the ground and open the door of the car. Schmidt went to the man "[o]n Sears' property . . ." and asked him what he was doing. The man replied: "I ain't doing nothing, man." As Schmidt went around the car to get nearer, the man bolted and ran. As Schmidt pursued him, he jumped a fence and got away. At the trial Schmidt testified that man was Robert E. Jackson, one of the defendants.

Schmidt went back to the car, recovered the sewing machine and "[l]ooked in the car for other Sears' property . . . ." In the glove compartment he found papers showing that the car belonged to a James Nelson. Schmidt then took the car's rotor so that it could not be operated. He took the sewing machine, the papers and the rotor to the security office and called his supervisor. On advice of the latter, Schmidt sat in an automobile in the rear of the parking lot with the white 1960 Ford and

the warehouse under surveillance. Forty minutes or so later, Schmidt saw two men come out of Door No. 24 and walk to the Ford. One sat behind the wheel and tried to start the car. Schmidt went to them and asked what they were doing. They did not answer. He then asked the two men to accompany him into the warehouse. One of the men showed Schmidt a draft card with the name James Nelson on it. According to Schmidt, the man had on the gray coat he saw in the building earlier. In his testimony, Schmidt identified defendant James Nelson as the man who showed the draft card and the codefendant who was not on trial, Ronald Dudly Hardman, as the man with Nelson. Hardman went into the warehouse with Schmidt; Nelson did not. After taking Hardman into the security office, Schmidt made an inspection of the area near Door 24 from which the two men emerged. There he saw four color and three black and white television sets on a dolly inside an empty truck.

The police were called and at about 10:09 p. m. Officers Belle and Diaferra came "[t]o the Sear's Distribution Center. . . ." Schmidt showed Officer Belle Door 24, the television sets in the empty truck nearby and a bluish-gray carton with "[t]he name Sears on it . . . a sewing machine that is sold by that company . . . ." Hardman was taken to the Melrose Park police station. At about 1:00 a. m. in the police station, Schmidt was shown two groups of photographs. From these he selected pictures of defendants Nelson and Jackson. Schmidt testified that no employee of Sears "[o]r anybody else from Sears ever gave either of these two defendants permission to enter the premises. . . ." Then he was asked, "Did you or anybody else who is involved with the Sears Corporation ever give either of these defendants to the best of your knowledge permission to take any property from the Sears' warehouse at that address?" Schmidt answered, "No." Thereafter, a complaint and warrant were prepared for the arrest of Nelson and Jackson. Nel-

son was arrested in his home; and Jackson was arrested on the morning of January 1, 1968 as he and his family were about to board a Greyhound Bus that was leaving Chicago for Montgomery, Alabama.

Both defendants testified. Jackson claimed an alibi. After saying that he was then on probation for indecent liberties with a child, he testified that on December 29 he arrived home "[a]bout maybe 4:30, 5:00, I should say." When asked, "[W]ere you at the Sears' warehouse in Melrose Park on December 29, 1967?", Jackson answered, "No." He and his family were packing to leave Chicago. He did not leave the house anytime that evening. His wife, Mrs. Gayle Jackson, supported this testimony. She added that she called the Adult Probation Office and spoke with a probation officer who gave Jackson authority to leave the jurisdiction. In rebuttal, the prosecution called Michael Pines, a probation officer who told the jury that authority to leave the State was not given probationers by telephone; rather, such authority was obtained by a court order. Jackson was recalled and he testified that "[a]round October 29 or the 1st of November . . . ," he appeared before the judge who admitted him to probation and obtained authority to leave Illinois and go to Alabama.

Nelson testified that in 1954 he was convicted of burglary. He had known Jackson "[m]aybe three or four years." In the evening of December 29, he loaned Ronald Hardman his 1960 Ford. According to Nelson, Hardman called him to come and pick up the car. He borrowed a 1967 Ranch Wagon from his aunt, met Hardman at a bowling alley and then went to "[t]he parking lot by the Sears' warehouse in Melrose Park . . . ." There he saw Schmidt who asked what he was doing there. Nelson said he told Schmidt that Hardman borrowed the Ford earlier and had called him to come and get it. He showed Schmidt the draft card which Schmidt mentioned in his testimony. Nelson testified that when

Schmidt asked him to go into the warehouse security office, he refused, sat in his own car and waited for the police to come. After waiting for awhile he left, leaving the car "[i]n the Sears parking lot . . ." since it could not be moved. After hearing the evidence of the parties, the jury found both defendants guilty of burglary.

First, defendants contend that neither the corporate existence of Sears, Roebuck and Co. nor its ownership or possession of the burglarized premises was proved. They argue that reference by witnesses (including defendant Nelson) to "Sears," "Sears and Roebuck," "Sears Corporation," "Sears warehouse," "Sear Distribution Center at 2065 George Street in Melrose Park," "Sears' property," did not prove existence of Sears and Roebuck as a corporation nor its ownership and possession of the place that was burglarized. Defendants cite two cases which they say support their contention.[1]

■ These cases, however, were instances in which no evidence was introduced to prove corporate existence or the ownership of the burglarized premises. In the one before us, on the other hand, two prosecution witnesses, without objection, named the injured party and gave the address of the injured property. "The purpose served by alleging the name of the person or property injured is to enable the accused to plead either a formal acquittal or conviction under the indictment in the event of a second prosecution for the same offense." People v. Walker, 7 Ill2d 158 at 161, 130 NE2d 182; People v. Knox, 98 Ill App2d 270, 240 NE2d 426. It is true, as defendants contend, that where ownership of burglarized premises is alleged to be in a corporation, the legal existence of that corporation is a material fact which must be proved; but proof of corporate existence may be shown by oral testimony if no objection

[1] Sykes v. People, 132 Ill 32, 23 NE 391; People v. Pernalsky, 334 Ill 38, 165 NE 190.

285

is made to that method of proof. People v. Gordon, 5 Ill 2d 91, 125 NE2d 73.

In People v. McGuire, 35 Ill2d 219, at 231–232, 220 NE2d 447, the court said:

> We believe that the time has come to re-evaluate the standards of proof established by earlier decisions. In other States, the ordinary rule is that the existence of a corporation may be shown by direct parol evidence. . . . This court's rulings to the contrary have sometimes given criminal trials, in which no corporation was a party, the appearance of a quo warranto proceeding against the victimized corporation. (See Sykes v. People, 132 Ill 32, 49–53 (Mr. Justice Magruder, dissenting).) We believe that these rulings are inconsistent "with the spirit that has substituted, in criminal procedure as well as in civil, an interest in the significant rights of the litigants for a ritualistic concern with empty formalities." (People v. Hill, 17 Ill2d 112, 119.) We therefore hold that in the absence of evidence to the contrary, the existence of a corporation may be shown by the direct oral testimony of a person with knowledge of that fact.

It follows that formal and better proof would have been made if a witness who knew the facts were asked whether Sears, Roebuck and Co. was a corporation and whether it owned the warehouse as alleged in the indictment. However, absence of this kind of precise interrogation is not important because if there was evidence that the injured party was a corporation, and that it owned or possessed the burglarized premises, it is of no moment that a direct question about these facts was not put to a witness. This view is supported by the language in McGuire (35 Ill2d 219, 220 NE2d 447, at 231):

In 1889, the General Assembly provided, "In all criminal prosecutions involving proof of the legal existence of a corporation, user shall be prima facie evidence of such existence." . . . (Now Ill Rev Stats 1967, ch 38, sec 160–1.) This statute foreclosed any holding that the introduction of a corporate charter was the "best evidence" of the corporation's existence and was therefore required. (Compare State v. Merchant, 48 Wash 69, 92 Pac 890, 892.) The statute apparently liberalized the law of evidence at the time of its passage, and it should not, in our opinion, preclude proof of the existence of a corporation by means other than those it specifies.

■ We conclude that the record of these proceedings contains proof of the essential facts; and the judgments based on them will enable each defendant to plead former conviction in the event of another prosecution for the offense charged in the indictment in this case. Compare People v. Collins and Jones, 123 Ill App2d 138, — NE 2d —.

Second, defendants contend that their constitutional right to confront a witness was violated by the testimony of Officer Belle who was asked:

Q. "What did you do after that?"
A. "After the conversation with Mr. Hardman, we obtained some pictures pertaining to the names that were given to us by Hardman."

Defendants objected and moved to strike this testimony. The trial court sustained the objection, granted the motion to strike and instructed the jury to disregard it. Defendants argue that despite the court's ruling in their favor, Belle's testimony told the jury that Hardman named Nelson and Jackson as his accomplices in the burglary. In support of this argument defendants rely

on Bruton v. United States, 391 US 123, 20 L Ed2d 476, 88 S Ct 1620 (1968) and on a number of Illinois cases which hold that a confession or admission made outside the presence of a defendant is not admissible.[2]

■■ These cases do not support defendants' contention. Belle did not testify to a confession, admission or statement of Hardman's that implicated defendants in any crime. Belle's response to which defendants objected was in part an improper answer to a proper question. People v. Nakutin, 364 Ill 563, 5 NE2d 78; People v. Carson, 341 Ill 11, 173 NE 97. Defendants by their objection and motion obtained the rulings they wanted. The trial judge went further and instructed the jury to disregard Belle's answer. In his instructions the trial judge told the jury they were to disregard any evidence that was stricken. Ordinarily, an instruction to disregard evidence cures error in its admission. People v. Maciejewski, 294 Ill 390, 128 NE 489; and see People v. Garafola, 369 Ill 232, 16 NE2d 741.

Third, defendants contend that the prosecuting attorney's argument to the jury was so prejudicial that it denied them a fair trial. In support of this contention defendants point to two statements made by the prosecutor during closing argument: first, he referred to the automobile owned by the defendant Nelson as "the outfit's car"; and second, he accused Nelson of having told a lie to the Secretary of State in connection with the registration of his 1960 Ford.

■ The first statement was innocuous. The second was not capable of the prejudicial effect defendants attach to it. Furthermore, improper remarks of counsel

---

[2] People v. Patris, 360 Ill 596, 196 NE 806; People v. Barbaro, 395 Ill 264, 69 NE2d 692; People v. Hodson, 406 Ill 328, 94 NE 2d 166; People v. Clark, 17 Ill2d 486, 162 NE2d 413; People v. Hal, 25 Ill2d 577, 185 NE2d 680; People v. Miller, 40 Ill2d 154, 238 NE2d 407; People v. Armstrong (Sumlin), 41 Ill2d 390, 243 NE2d 825.

during closing argument do not constitute reversible error unless they result in substantial prejudice to the accused. People v. Nilsson, 44 Ill2d 244, 255 NE2d 432. Considered in the light of the evidence of guilt presented by the prosecution, it cannot be said that the statements of the prosecuting attorney, complained of by defendants, were a factor in their convictions and that the verdicts against them would have been different had the statements not been made. People v. Nicholls, 42 Ill2d 91, 100, 245 NE2d 771; People v. Harkey, 123 Ill App2d 256, — NE2d —, and the cases cited. Judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.