THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM BRACY, Defendant-Appellant.

(No. 57093;

First District (5th Division)—September 14, 1973.

James R. Bronner and John Henry Browne, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

After a trial before a jury, defendant was found guilty of three counts of armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2) and sentenced to serve concurrent terms of 12 to 36 years on each count. Defendant appealed directly to the Supreme Court which ordered the case transferred to this court.

On appeal defendant raises five issues: (1) his motion to suppress identification testimony and his motion for a mistrial were improperly denied, (2) misrepresentations by the prosecution prevented the court from examining the State's file for evidence favorable to the accused, (3) the prosecution's closing argument was improper, (4) the prosecution

improperly attempted to enhance the credibility of its witnesses before the jury, and (5) the court erred in refusing to order the prosecution not to use the defendant's prior convictions against him if he testified.

The facts are as follows: During the night of February 7-8, 1970, a number of people were playing poker and shooting dice in the second floor apartment of Willie Blackwell, located at 1850 East 79th Street in Chicago. Between 6:00 A.M. and 7:00 A.M. on February 8, while several persons were still gambling, a group of uninvited people arrived at the door of Blackwell's apartment. Blackwell, testifying for the prosecution, stated that when he opened the door, he saw the defendant, William Bracy, accompanied by three or four men. Bracy had a gun in his hand. As the door opened, Bracy fired a shot into the air. Blackwell testified that he immediately ran into the living room of his apartment and hid behind a bar until the intruders had left.

Robert Cooksy and Glenzie Green testified for the State that they were shooting dice in the back room of Blackwell's residence during the early morning hours of February 8 when they saw the defendant, carrying two guns, enter the premises. They stated that Bracy shot into the floor and ordered them to line up with their backs to the wall. Cooksy stated that between 12 and 15 men were shooting dice at that time. Both witnesses testified that Bracy ordered those present to give him their money, beating one man who failed to comply. Cooksy placed the money which he had in his hand and that which he had in his pocket in a shopping bag when ordered to do so by defendant. Green testified that he gave defendant his money after Bracy stated, "[I]f I find one dollar in your pocket, I'll kill you."

James Jones testified that he arrived at the apartment during the course of the robbery. He stated that he was met at the door by a large man who placed a gun at his head and ordered him to give up his money. Jones was then taken to the back room of the apartment where he saw defendant, holding two pistols, make those present place their money in a shopping bag.

Cooksy testified that although he did not immediately see him, he became aware of another gunman working with defendant during the robbery. He described the second robber as being a large heavyset man. Cooksy stated that he heard the larger man urging defendant to leave. Green, who stood facing the wall after he had surrendered his money, testified that he did not see an accomplice of defendant but remembered a conversation similar to that recalled by Cooksy between Bracy and another person. Jones stated that he heard the larger man tell Bracy, "Let's split."

It was Cooksy's testimony that the larger man grabbed the shopping

bag into which the money had been placed and left the apartment by diving through the window of the bathroom. Green and Jones testified that the bag man left through the window, though neither could state whether or not he had taken the shopping bag.

Officer James Covington of the Chicago Police Department testified that during the morning of February 8, 1970, between the hours of six and seven, he had been on patrol in a marked squad car in the vicinity of 1850 East 79th Street. He stated that he was stopped by private citizens on the street who told him that there was a robbery in progress at the above address. After radioing for assistance, he proceeded to the scene. Shortly after his arrival at the 79th Street address, he was joined by Sergeant John Gallagher and Officer William Byrne. After unsuccessfully attempting to gain entrance into the building through a locked hallway door, the police officers noticed defendant nonchalantly walking down the stairs from the second floor. When Bracy reached the door to the hallway at the foot of the stairs, Covington noticed the butt handle of a gun in his pocket. At this moment defendant told the officers that "the action was upstairs." Having noticed the gun, Covington reached into defendant's coat pocket to grab it. At the same time Gallagher, who testified that he also saw a gun in Bracy's pocket, reached into the left pocket of defendant's coat and retrieved a second pistol. Sergeant Gallagher then ordered Officer Covington to take defendant into custody.

Gallagher testified that he and Officer Byrne next proceeded up the stairway to the second floor where they heard quite a bit of activity from behind a closed door. The officers announced their presence. Almost immediately thereafter Gallagher observed a Negro male, described as "a big man * * * well over two hundred pounds," carrying a gun and a shopping bag in his hands, jump through a window and land on a rooftop. The officers ordered the man to stop, but he refused to do so, responding instead with a single gunshot. Gallagher returned his fire, then chased the man through an apartment in an adjoining building. He found the man's body at the front door of this building.

Gallagher and Byrne then returned to the apartment and arrested those found there for gambling. Defendant, handcuffed and in police custody, was still present when Blackwell, Cooksy, Green and Jones were led downstairs. All four men identified defendant as the man who had robbed them.

Blackwell testified that while he was under arrest he identified defendant a second time. He stated that while seated in a large room with four or five others, he was asked by a police officer if he saw one of the robbers. Blackwell pointed out defendant. Cooksy testified that when

the police were taking him to his jail cell, he saw defendant sitting in another cell and told the police that he was one of the robbers.

Defendant called as his witnesses Detective James Doyle and Detective John Toles of the Chicago Police Department. The officers testified that they had other suspects for the crime and that a line-up was held at which these men were identified. It was the testimony of the officers that they had asked the witnesses whether the men presented in the line-up were involved in the robbery and they responded that the suspects were also at the party.

The defendant chose not to testify in his own behalf.

OPINION

The defendant's first contention is that he was continually and improperly frustrated in his efforts to suppress the eyewitness identification testimony of the State's witnesses. Prior to trial defendant filed a discovery motion, granted by the court, which included a request for information concerning any out-of-court identifications of the defendant. The State, first orally and later in a written response, reported that no line-up had been held. The defendant objected to that answer as being unresponsive since witnesses might have identified the defendant at proceedings other than line-ups. The State's Attorney replied that to his knowledge there had been no identifications of the defendant other than that at the scene of the robbery.

When Willie Blackwell, the State's first witness, testified as to his station house identification of defendant, the defense moved for a mistrial, basing its motion on the alleged prior misrepresentations by the prosecution concerning out-of-court identifications. The court reserved judgment on the motion until the conclusion of the witness' testimony.

After Blackwell finished his testimony, defense counsel moved for a mistrial. It was claimed that the defendant had been prejudiced by his inability to file pretrial identification suppression motions, and that such a motion made at trial after the witness had identified the defendant in the presence of the jury would be patently inadequate. The court denied this motion. Defendant claims that this motion should have been granted or alternatively that the court should have at least ruled affirmatively on his delayed motion to suppress eyewitness identification.

■■ Defendant is incorrect in his assertion that the denial of his motion for mistrial was improper. A motion to declare a mistrial is addressed to the sound discretion of the trial court. It may be granted where there is manifest necessity for such an act or the ends of public justice would be otherwise defeated. (*People v. Chaffin*, 49 Ill.2d 356, 274 N.E.2d 68.) The burden is on the movant to establish the necessary prejudice. (*People v. Dolgin*, 415 Ill. 434, 114 N.E.2d 389.) Defendant mistakenly relies

on *People v. Hal,* 25 Ill.2d 577, 185 N.E.2d 680, to support his claim that a mistrial should have been allowed. In *Hal* an assistant state's attorney and a police officer identified and gave a substantial amount of testimony with reference to a confession by the defendant which the court subsequently ruled could not go to the jury. In view of the closeness of the case and the jury's role in fixing punishment, it was held that curative instructions were insufficient to shield defendant from prejudice and that a new trial was required. In the instant situation the case is not so close nor the alleged damage so severe as to require the same result. Here, Blackwell testified that he had identified defendant at the scene of the robbery as well as in the police station. Cooksy, Green and Jones gave identical identification testimony. Defendant failed to establish the prejudice which would have been necessary to carry his motion.

■■ Defendant's contention that his suppression motion was improperly denied is no more correct. At the conclusion of Blackwell's testimony the court correctly stated that a suppression motion may be entertained at trial if it were based upon heretofore unknown information. The court added that since no such motion was made at the time Blackwell's station house identification had come to light, and that since that revelation the witness testified extensively, including cross-examination by the defendant, the right to suppress had been waived. The defendant submitted a written motion seeking to suppress eyewitness identifications by Blackwell, Cooksy and Green only after the latter two had also completed testifying. The motion was denied. This court believes the ruling to be correct. A motion to suppress eyewitness identification must be made before trial unless the opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. See section 114—12(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 114—12(c)), with regard to motions during trial to suppress illegally seized evidence. (See also *People v. Thomas,* 88 Ill.App.2d 71, 232 N.E.2d 259.) If made during trial, the motion should be made as promptly as the circumstances of the individual case allow. (*Cf. People v. Zazzetta,* 27 Ill.2d 302, 189 N.E.2d 260.) Thus, a standard of promptness has been established with regard to suppression motions made at trial. In the case at bar the defendant failed to move to suppress when Blackwell first revealed his station house viewing of defendant and, even though the court indicated it would require expeditious submission of such a motion, he acted in the same manner with regard to Cooksy's cell-block identification. Furthermore, while no finding of fact was made by the court concerning Cooksy, it did make such a finding concerning Blackwell, concluding that the procedure surrounding the challenged identification was not attended by improper suggestiveness. Therefore,

we hold that the denial of the defendant's motion to suppress identification testimony was not error.

Defendant next argues that misrepresentations by the prosecution prevented the trial court from examining the State's file for evidence favorable to his case. In his post-trial motion for a new trial defendant requested the trial court to make an in camera inspection of the prosecution's file to determine if any evidence favorable to him had not been disclosed. The assistant state's attorney represented that all police reports and witness statements had been made available to defendant. On this basis the court denied the motion. Defendant here contends that the prosecution's file contained the reports and statements of police officers who were included in the list of potential State witnesses but never called, the statement of a civilian witness who was similarly listed, the entire form of a police report, a portion of which had been introduced at trial, and the report of the Police Department's crime laboratory. Defendant does not argue that these documents were in any way exculpatory, but claims that he had an absolute right to have them inspected and that the failure of the prosecution to produce them constituted prejudicial error.

■■■ There can be no doubt that the prosecution has a constitutional obligation to disclose any evidence which is favorable to the defendant on the issue of guilt or innocence or on the issue of punishment. (*Brady v. Maryland*, 373 U.S. 83; *Giles v. Maryland*, 386 U.S. 66.) However, there is no concomitant constitutional requirement that the prosecution make a complete and accurate accounting of all police investigatory work. (*Moore v. Illinois*, 408 U.S. 786.) *Moore* holds that for prejudice to lie, the evidence must be both material and favorable to defendant. This is true even if evidence is suppressed over defendant's motion for production. Here no showing of benefit or materiality was attempted despite the availability of the names and addresses of those listed as potential witnesses but never called upon to testify at trial. The burden was on defendant to make use of this information. *People v. Smith*, 46 Ill.2d 430, 263 N.E.2d 860, *cert. denied*, 402 U.S. 1009.

■■■ Defendant's third contention is that the prosecution's closing argument was improper. Defense counsel argued that the State had failed to prove the crime of armed robbery in that it failed to introduce evidence that anything had been taken. Specifically, it was argued that although there was much testimony concerning the shopping bag into which the fruits of the robbery had been placed, it was never introduced into evidence. The assistant state's attorney responded by arguing before the jury that he was precluded by the rules of evidence from introducing the bag. Defendant claims that this was merely a deliberate attempt

to mislead the jury. It has long been recognized that one cannot provoke a reply to an improper argument and then claim error when an answer is given. (*People v. Anderson,* 48 Ill.2d 488, 272 N.E.2d 25; *People v. Hayes,* 23 Ill.2d 527, 179 N.E.2d 660.) In the case at bar, since there was testimonial evidence on the subject, the State was under no obligation to introduce the proceeds of the robbery. Furthermore, the determining factor as to whether a closing argument will be held prejudicially improper is whether there was a reasonable possibility that it might have contributed to defendant's conviction. (*People v. Gilmer,* 110 Ill.App.2d 73, 249 N.E.2d 129.) Here, although the assertion by the assistant state's attorney that he was foreclosed by the rules of evidence from introducing the paper bag may be questionable, the weight of evidence against defendant was so overwhelming that we find no such reasonable probability present.

■■ Defendant argues that the prosecution improperly attempted to enhance the credibility of its witnesses by conveying to the jury the impression that their trial testimony was consistent with their testimony before the grand jury. The asserted impropriety occurred during the redirect examination of Officer Covington. While questioning the witness about his testimony before the grand jury, the prosecutor selected the grand jury transcript from papers on defense counsel's table. Defendant's objection to this line of questioning was sustained. However, his motion for mistrial based upon the alleged misconduct by the assistant state's attorney was denied. Defendant argues that this behavior created an erroneous inference that the witness' trial testimony was completely consistent with that given to the grand jury. We find this argument to be without merit. It is speculation to surmise that the jury knows that the papers in the prosecutor's hands were the transcripts of the grand jury proceedings, and since this point was never argued to the jury by the State, the defendant was not prejudiced. *People v. Sanders,* 110 Ill. App.2d 85, 249 N.E.2d 124.

Defendant further complains that it was improper to argue before the jury that the testimony of Willie Blackwell must be believed because it had not been impeached by his testimony at preliminary hearing or before the grand jury. However, the record indicates that this argument was in response to attacks on Blackwell's credibility by defendant and hence was proper.

■■ Defendant's final contention is that the court below erred in denying his motion *in limine* to prevent the State from using his prior armed robbery convictions for impeachment purposes if he testified. Defendant had been convicted of armed robbery on two previous occasions, once in 1964 and again in 1965. In support of his position he cites *People v.*

*Montgomery*, 47 Ill.2d 510, 268 N.E.2d 695. His reliance on this case is misplaced. Not only are the facts found in *Montgomery* clearly distinguishable, that case dealing with the admission of a 21 year old robbery conviction in a prosecution for sale of narcotics, but even more importantly it has been held that the *Montgomery* rule was to be applied only prospectively. (*People v. Rossi*, 52 Ill.2d 13, 284 N.E.2d 275.) The trial in the instant case was conducted in October 1970; the opinion in *Montgomery* was issued January 25, 1971. Clearly there was no error in the denial of defendant's motion.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.