THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KIM S. WILLIAMS, Defendant-Appellant.

Third District   No. 79-57

Opinion filed February 7, 1980.—Rehearing denied March 10, 1980.

Ross E. Morris, of Lewistown, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Terry Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from a conviction following a jury trial in the Circuit Court of Fulton County. Defendant, Kim Williams, was charged with attempt murder, aggravated battery, fleeing and attempting to elude police and resisting arrest. The defendant pleaded not guilty to all charges and self-defense to the charges of attempt murder and aggravated battery. The jury returned verdicts of not guilty of attempt murder and guilty on all other counts. The issues which the defendant appeals pertain only to the charge of aggravated battery.

The incident giving rise to the present case took place shortly after 3 a.m. on June 5, 1978. Phylis Postin lived in an apartment in Canton with her 3½-year-old son and a girlfriend, Lori Myers. The exact details of the incident were disputed at trial. Postin testifed that on Sunday night June 4, 1978, she had just returned from a concert and that after she went to sleep she woke up to find the defendant standing over her poking a knife in her chest. She said that the next thing she knew she was on the floor and he was on top of her and the knife dropped to her side and she picked it up and threw it under the bed with her right hand. They struggled for the knife when there was a knock at the door. Williams ran out the back door, and when Postin answered the door, two policemen were there. Postin went to the hospital where she and her mother counted between 18 and 21 stab wounds in her chest and her arm.

Defendant testified to a completely different story. He stated that on the night of June 4, 1978, he had been partying. He and his friends had drunk beer and played cards until about 12:45 a.m. Defendant, who had dated Postin's roommate, Lori Myers, decided to go over and see her. He testified that after he got to the apartment, he noticed Postin standing there. He asked if Lori was there, and she said no, that she was locked out of her apartment. This was about 2:15 a.m. Defendant stated that he took the kitchen window screen off, slid the window open, went in and opened the door for her. She thanked him and gave him a kiss and then they started kissing. They went to Postin's bedroom where they lay on the bed and started kissing again. There was a knocking on the door and Postin went to answer it. When she came back they started kissing again and he saw she had a knife in her hand. Defendant testified that she started to stab him and he pushed her arm back and the knife went in Postin's chest. They struggled and fell off the bed; Postin dropped the knife, grabbed it by the blade and threw it away, incurring cuts on his right hand. He got

up, went out the living room door, got into his car, saw the police, and sped away. He was stopped and arrested a few minutes later.

In addition to the conflicting testimony of these two witnesses, there was significant conflict between various other witnesses as to whether or not defendant had cuts and bruises, with some witnesses saying he had bruises and cuts and others saying he didn't. The police found blood on the bedsheets, and as a result, blood samples were taken from Postin and the defendant so as to discover whose blood it was. These were sent to the Department of Law Enforcement, Bureau of Scientific Services for the State of Illinois. On June 22, 1978, the blood was sent to the FBI laboratory in Washington, D.C., where it was tested by C. Stephen Rogers. Rogers' tests showed that the blood on the bedsheets belonged to the defendant. The lab report was dated September 11, 1978.

On September 7, 1978, the State had filed its third supplemental answer to defendant's motion for discovery in which they stated that they intended to call Rogers, among others, as a witness. On October 3, 1978, the State filed its fifth supplemental answer and attached the September 11 lab report. On October 27, 1978, the State filed a motion requesting the court to order the defendant to give a second sample of blood. The motion was granted and another sample of defendant's blood was taken and shipped to Washington on November 1, 1978. The day the trial started, November 13, 1978, the prosecutor filed a seventh supplemental answer and attached a copy of the FBI lab report submitted by Rogers on November 9, 1978. This report confirmed the findings of the first report.

The State decided not to call Rogers as a witness and on November 13, 1978, the day of trial, the State filed a list of witnesses it intended to call at trial. Rogers' name was not on the list. On the fourth day of the trial, November 16, defendant's counsel realized Rogers was not going to be called and filed a motion to compel the State to produce Rogers as a witness or to stipulate to the accuracy and correctness of his report. The trial court denied the motion on November 17. Verdicts were returned by the jury finding the defendant not guilty of attempt murder and guilty of all other charges. Defendant appeals and raises four issues: (1) whether due process and fundamental fairness requires that a jury be fully and truthfully informed as to all evidence obtained from the defendant by the State, through its power of discovery, which is favorable to or exculpatory of the defendant; (2) whether the trial court erred in refusing to order the State to call its expert witness as the court's witness or to require the State to stipulate to the admission of his report in evidence where the prosecution refused to call him as its witness; (3) whether the court erred in refusing to give an instruction requested by defendant that since the State refused to call the witness to testify, the jury could infer that his testimony would be adverse to the State; and (4) whether the

previous alleged errors, in addition to the prejudicial argument of the prosecutor, combined to deprive the defendant of due process of law and a fair trial. We affirm.

Defendant's first issue is that he was denied due process and a fair trial because the State did not inform the jury of evidence which defendant claims is exculpatory. Defendant cites no authority, and our research reveals none, for the proposition that where the evidence is available to both sides, the State is required to present evidence injurious to its case. Defendant was aware of the evidence which the State had acccumulated, and had defendant wished to bring this evidence to the jury's attention, it could have done so by subpoenaing the witness. The defense had the authority to subpoena Stephen Rogers under the Uniform Act to Secure the Attendance of Witnesses From Within or Without a State in Criminal Proceedings (Ill. Rev. Stat. 1977, ch. 38, pars. 156—1 through 156—6). The District of Columbia, Rogers' place of employment, has also adopted the Uniform Act. D.C.C.E., sec. 23—1501 to 23—1504.

Defendant's reliance on *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, is misplaced. In *Brady* the Supreme Court held that withholding information favorable to the defendant by the prosecution, which was in the exclusive possession of the prosecution, violated due process. In the instant case, the information was not in the exclusive possession of the prosecution. The defendant was well aware of the lab reports, and had he wished to guarantee Rogers' presence, he could have subpoenaed him. Alternatively, once defendant discovered Rogers would not be present at the trial, he could have moved for a continuance in order to subpoena Rogers. Therefore, *Brady* is inapposite.

■■ Defendant also cites various cases in which prosecutorial misconduct resulted in evidence favorable to the defendant being suppressed. These cases are inapplicable in that in the present case there was no misconduct on the State's part. The State simply decided not to call a witness who would not be favorable to their case. They did not withhold this evidence from defendant nor make it unavailable to him. Therefore, we hold that the State's simply deciding not to call a witness favorable to the defendant does not deprive the defendant of due process.

■■ Defendant's second issue is whether or not the court erred in refusing to order the State to call its expert witness as a court witness or, in the alternative, to order the State to stipulate to the admission of his report. The principles governing the calling of a court witness are well established in our criminal law. "A witness may be made a court witness, and subjected to cross-examination by either side, where, for sufficient reasons shown, his integrity or veracity is doubtful and neither side desires to vouch for his testimony." (*People v. Mostafa* (1971), 5 Ill. App. 3d 158, 274 N.E.2d 846.) That is not the situation here. Defendant was

certainly willing to vouch for Rogers' testimony. Further, defendant was capable of calling the witness. Therefore, we believe that is was not error for the trial court to refuse to have Rogers called to testify as a court witness. Additionally, we find no reason that the State should have been forced to stipulate to the admission of Rogers' report and hold that there was no error on the trial court's part by failing to do so.

■■ Defendant's third issue on appeal is whether, where the State failed to call its expert witness, the court erred in refusing to give defendant's instruction No. 15, which stated that the jury could infer from this failure that the witness' testimony would be adverse to the State. No negative inference is raised by the failure of the State to call a witness where that witness is also known and available to the defense. (*People v. Mayfield* (1979), 72 Ill. App. 3d 669, 390 N.E.2d 1315.) The witness was known and available to the defendant and, having failed to call the witness himself, the defendant is in no position to claim prejudice by the failure of the State to use Rogers' testimony. (*People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) Therefore, we hold that there was no error in the court's refusing to give the instruction. Defendant cites *People v. Beacham* (1977), 50 Ill. App. 3d 695, 365 N.E.2d 737, as authority for his argument. However, *Beacham* is inapplicable to the instant case. In *Beacham* the court merely states that a lack of evidence available to clarify matters may result in a jury drawing a negative inference. It does not deal with the present situation, where evidence is present and known to the defendant and neither side calls the witness to present the evidence.

Defendant's final issue is whether the combination of the previous alleged errors, combined with the prejudicial argument of the prosecutor, was enough to deprive the defendant of due process. Because there was no error with respect to defendant's previous issues, the fourth issue is simply whether or not the arguments of the prosecutor during closing arguments deprived the defendant of due process. We believe that they did not. During closing arguments the prosecutor pointed to the defendant and said "There sits a very, very sick and dangerous young man." The prosecutor also claimed that the defendant had self-inflicted a wound in his right wrist after the incident to bolster his claim of self-defense. However, defendant had never claimed his wrist was injured during the incident.

■■ Defendant contends that these arguments were prejudicial and denied him due process. Defendant concedes that he did not object to the above arguments and that normally this would waive any error in this regard. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) However, defendant contends that the arguments constituted plain error, *i.e.*, that the errors were so plain and prejudicial that failure to object to them was not a waiver for purposes of appeal. (*People v. Young* (1975), 33 Ill. App.

3d 443, 337, N.E.2d 40.) We do not believe these arguments to be plain error. We believe that these remarks did not influence the jury and result in substantial prejudice, that they were not a material factor in defendant's conviction, that they were not so inflammatory as to deprive defendant of a fair trial and that the verdict would not have been different had the comments not been made. We therefore find no plain error in the prosecutor's closing argument. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

For the abovementioned reasons, the judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

ALLOY and SCOTT, JJ., concur.