THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD E. FERGUSON, Defendant-Appellant.

Third District    No. 80-531

Opinion filed August 27, 1981.

Verlin R. F. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

■■ The defendant, Ronald E. Ferguson, appeals from his conviction for burglary following a bench trial in the Circuit Court of Will County. He subsequently received a 5-year term of imprisonment. Several issues are presented for review. The Appellate Defender's Office, who originally represented the defendant on this appeal but which withdrew its representation after filing a brief on behalf of the defendant, raises three issues: (1) whether all post-trial orders must be vacated and this cause remanded because the defendant's appointed attorney labored under a conflict of interest; (2) whether the circuit court erred in sentencing the defendant to consecutive sentences; and (3) whether the court's alleged prejudice deprived the defendant of his right to a sentencing hearing before a neutral and impartial judge. The defendant also presents several issues raised within a cornucopia of *pro se* briefs, letters, and motions which are the subject of two pending motions to strike. Although the defendant appears to have violated Supreme Court Rule 343 by failing to file his *pro se* briefs within the prescribed order and times, given the vagaries of prison life and the State's adequate response to most of the issues presented, we deny the State's motions to strike and thus consider the issues raised in the defendant's *pro se* brief: whether the State proved corporate existence of the owner of the burglarized premises; whether the State offered perjured testimony against the defendant; and whether the State improperly suppressed allegedly exculpatory evidence seized from the defendant at the time of his arrest. We affirm both the conviction and sentence.

The first evidence presented by the State in its case in chief consisted of the stipulated testimony of Officer Robert Briney. On February 12, 1980, at approximately 9 p.m., Briney received a call alerting him to a

reported burglary at the Joliet Motel 6. While responding, he heard radio bulletins describing the suspect as a black male in his early 20's wearing a beige or green jacket. The bulletin also announced that the suspect was fleeing the scene on 4th Avenue. Arriving at 4th Avenue, the officer saw a person fitting the broadcast description running down the street. Briney stopped the suspect, handcuffed him, and placed him in the patrol car. The suspect, the defendant, was then brought three blocks to the Motel 6, where he was identified by Mark Warnick, the motel security guard, as the person he saw carrying a television set from one of the motel rooms. During the booking process, and without questioning by the officer, the defendant voluntarily said he would plead guilty to burglary if police found his fingerprints in the motel.

A second officer, David Gerdes, also testified regarding statements made by the defendant while in custody. After receiving his *Miranda* warnings, the defendant initially denied any participation in the burglary, but later admitted to entering the motel with a friend named Melvin. The two had been drinking heavily. Melvin suggested that they go to the motel and steal some television sets. The defendant reluctantly agreed. After Melvin ripped one of the sets from its wall mounting, they heard a noise, Melvin dropped the set, and the two fled the motel by jumping a fence surrounding the motel.

A third officer, a crime-scene technician, testified concerning his unsuccessful attempt to match the defendant's fingerprints to those lifted from the motel and his failure to discover any threads found on the fence surrounding the motel to match to the threads of the defendant's torn pants. The officer had previously removed the defendant's pants for evidence, but when no threads were discovered on the fence, no match was attempted and the pants were not introduced into evidence.

Finally, the motel security guard, Mark Warnick, testified. Although he was unsure, he assumed that, because Motel 6 hired security services, Motel 6 was the owner of the motel.

At about 9:15 p.m., Warnick was in an apartment on the lower floor when he heard noises upstairs. He immediately notified the police and then searched the motel. On the second floor, Warnick noticed a man in the hallway carrying a television. The man dropped the television and ran to Room 3 when Warnick yelled at him. Warnick saw the man for a few seconds and noticed that he was black, about 5'9" tall, with a mustache and a large nose and that he was wearing a stocking cap and a beige coat. The guard then returned downstairs and waited for the police. Officers later brought in one man for Warnick to identify. Warnick said that this man was not the one he had seen. The police later brought in a second man, the defendant. Warnick identified the defendant as the man he had seen in the hallway—both in the show-up and at trial.

The defendant's mother, Louella Ferguson, was the first defense witness. Ferguson testified that she was at her home at 415 Grover on February 12, 1980, at about 9 p.m. The defendant had left the house earlier that day but came back for a sandwich between 9 and 9:30 p.m.

The defendant then assumed the stand in his own defense. He had been drinking heavily with a friend on February 12, 1980, and had returned home at 9 p.m. His house was located two blocks from Motel 6. After eating a sandwich at home, the defendant left at approximately 9:25 p.m. to visit his cousin. While running down 4th Avenue, officers arrested and took him to Motel 6 for identification. According to the defendant, despite the motel guard's failure to recognize the defendant, the officers took him to the police station for processing. The defendant denied making any statements during either fingerprinting or interrogation by Gerdes.

At the conclusion of the defendant's testimony, defense counsel informed the court that he wished to call the defendant's brother, John Ferguson, to testify as an alibi witness. The State objected to such testimony because the witness had been present in the courtroom despite a motion to exclude witnesses. The court sustained the objection, and the defense rested.

Following closing arguments by counsel and a statement by the defendant, the court found the defendant guilty of burglary.

Both defense counsel and the defendant filed post-trial motions. The defendant's *pro se* motion contained, in addition to general allegations that his appointed counsel "sold out," the specific allegation that because of defense counsel's incompetent handling of John Ferguson, the defendant had been denied his sixth and fourteenth amendment right to effective assistance of counsel. At the hearing on the post-trial motions, defense counsel first denied the defendant's claim of incompetence and then moved to withdraw as counsel. The motion was denied, and counsel proceeded to argue the merits of the other allegations contained in the post-trial motions. The court denied both motions.

At the sentencing hearing, the circuit judge first took issue with an allegation contained in the presentence report. The defendant reported that while he was being escorted to a courtroom for sentencing for an unrelated offense, he confronted the judge in the instant case in a court hallway and renewed his complaints concerning a shoulder injury. The judge allegedly responded, "That's fine. You can get surgery in the penitentiary when I sentence you there." At this time the court had already found the defendant guilty of burglary in the instant case, and he was awaiting sentencing. The judge denied making this statement and prevented the defendant from calling the judge's bailiff to corroborate the defendant's allegation. After considering the presentence report and the

evidence adduced in mitigation, the court sentenced the defendant to a 5-year term of imprisonment to run consecutively to a 2-year term the defendant was then serving.

■■ The defendant first contends that a *per se* conflict of interest arose when the defendant accused his court-appointed counsel of incompetence in a *pro se* post-trial motion. He specifically argues that whenever a client charges his counsel with incompetent representation a *per se* conflict of interest arises because counsel is then faced with a "Charybdis and Scylla"-like dilemma: on the one hand, counsel has the duty to protect his client's interests by arguing his own ineffectiveness, while on the other hand, counsel will naturally seek to protect his professional reputation by defending his actions to the possible detriment of his client's best interests. Although we recognize that some allegations of incompetence may present a conflict of interest (see *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169; *People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105), the allegations must not merely constitute spurious claims evolving from petty disputes between counsel and client. (See also *People v. Gustafson* (1979), 75 Ill. App. 3d 497, 393 N.E.2d 1315; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) Accordingly, we hold that no conflict of interest results from an allegation of incompetence unless the allegation proves to be true.

■■■ In order to successfully establish incompetence of counsel, a defendant must demonstrate actual incompetence, as manifested in the performance of his duties as trial attorney, which resulted in substantial prejudice to the defendant without which the outcome would probably have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) The degree of competency must be of such a low caliber as to reduce the proceedings to a farce and amount to virtually no representation. (*People v. Stanley* (1972), 50 Ill. 2d 320, 278 N.E.2d 792.) Accordingly, the alleged incompetency must be founded upon more than the client's disagreement with counsel's choice of trial tactics or judgment. Likewise, substantial prejudice must be shown by more than mere speculation or conjecture on the outcome of the trial had the representation been more to the defendant's liking.

■■ In the instant case, the alleged incompetence occurred when the defendant's appointed counsel failed to observe the continuing order to exclude all witnesses from the courtroom. Thus, an alibi witness, John Ferguson, was unable to testify. Upon close examination of the record, though, we find the testimony of the defendant's brother would not have changed the outcome of the trial. Therefore, assuming the failure to exclude the witness was incompetence, the record clearly shows no substantial prejudice to the defendant resulted. The evidence of the defendant's guilt was overwhelming. Not only did the defendant fit the descrip-

tion of the suspect reported to have fled from the Motel 6, the security guard identified the defendant as the person he surprised on the second floor of the motel. Moreover, the defendant volunteered several inculpatory statements concerning his participation in the offense. Although the defendant and his mother testified in an attempt to establish an alibi, their testimony was not accepted by the court in view of this overwhelming evidence of guilt. Because the excluded witness' testimony regarding his brother's alibi would have been the same as that of the defendant and his mother, this testimony would merely have been cumulative and would not have affected the outcome of the proceedings. Thus, the allegation of incompetence was unfounded and no conflict of interest arose.

The defendant next argues that, because the circuit judge failed to specifically state on the record that he believed that a consecutive sentence was necessary to protect the public, the court violated section 5—8—4(b) of the Unified Code of Corrections and, accordingly, his cause must be remanded for sentencing. That section provides:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, *the basis for which the court shall set forth in the record.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).

■■ We find the defendant's interpretation of section 5—8—4(b) as an incantation requiring the court to state specifically that it was of the opinion that consecutive sentencing would protect the public to be untenable. The section only requires that the reasons offered by the sentencing court support its conclusion that a consecutive sentence was necessary to protect the public from any further criminal conduct. It is the basis underlying these reasons that the court must set forth in the record, not the mere conclusion as the defendant contends. To rule otherwise would promote form over substance without giving defendants any further protection against arbitrary sentencing decisions.

■■ Upon examining the record of the sentencing hearing, we find the court sufficiently followed the statutory requirement of section 5—8—4(b), in imposing consecutive sentencing. The court first considered the defendant's alcoholism and indicated that he could have received alcoholic counseling earlier. The court also noted that the defendant was already sentenced to the Illinois Department of Corrections at the time of sentencing for the instant offense. The court then examined the defendant's history of prior criminality (one burglary, one misdemeanor theft, and two felony theft convictions), saying first that he would be ineligible for probation and then sentencing him to a 5-year term of imprisonment to be

served consecutively to the other sentence. In light of the defendant's demonstrated recidivism prompted in part by his alcoholism, the court's imposition of consecutive sentencing was eminently reasonable.

■■ The defendant next contends that, because of the circuit judge's alleged prejudice against the defendant, he failed to receive a sentencing hearing before a neutral and impartial judge. Accordingly, he requests us to vacate the sentencing order and remand for a hearing before a different judge to determine whether the sentencing judge did in fact utter a prejudicial statement to the defendant prior to the sentencing hearing. We reject this argument and affirm the sentencing disposition. Because the defendant's allegation was completely unsubstantiated, the court acted properly in summarily rejecting the claim of prejudice. For this court to rule otherwise would require a separate hearing before a second judge on every spurious charge of bias. Such a procedure, in addition to wasting judicial resources, would conflict with the policy of section 5—4—1(b) of the Unified Code of Corrections, which provides for the same judge to preside at sentencing as that who presided at trial. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(b).) For these reasons, the court did not abuse its discretion by summarily rejecting the defendant's charge of bias.

■■■ We also find the defendant's three *pro se* claims to be without merit. He first contends that Warnick's testimony concerning ownership of the burglarized premises was insufficient to prove the existence of the alleged corporate owner, Motel 6. The law in Illinois is well established that corporate existence may be demonstrated by various kinds of proof, including, for example, oral statements (*People v. Nelson* (1970), 124 Ill. App. 2d 280, 260 N.E.2d 251), judicial notice (*People v. Whittaker* (1970), 45 Ill. 2d 491, 259 N.E.2d 787), or even references from the corporation's properties (*Nelson*) or products (*People v. Childress* (1971), 2 Ill. App. 3d 319, 276 N.E.2d 360). The proof, offered in whatever form, must establish the existence of an owner who had an interest in the burglarized premises superior to that of the defendant and must sufficiently inform the accused of the charges to protect him from possible double jeopardy. (*People v. Sims* (1975), 29 Ill. App. 3d 815, 331 N.E.2d 178.) In the case at bar, Warnick, as well as the arresting officer, made several references to the premises as belonging to Motel 6, a corporate entity. Here, as in *Childress*, there is no allegation that the defendant was unable to prepare his case based upon the allegations contained in the information and there is no danger of double jeopardy because the information stated the defendant, without authorization, entered the premises of Motel 6 located at 409 Richards Street, Joliet, Illinois. Likewise, there is no question that the testimony also established that Motel 6 had an interest in the burglarized premises superior to the defendant's.

■■ The defendant next alleges that Officer Gerdes gave perjured testi-

mony and that the circuit court erred in admitting this testimony. Upon an examination of the record, we find no inconsistencies in Gerdes' testimony, contrary to the defendant's assertion that during interrogation the defendant admitted to Gerdes that he was intoxicated. Gerdes testified that although the defendant said that he was drinking large amounts of wine and gin prior to the burglary, the defendant did not appear intoxicated. Gerdes also stated that the defendant never said he was intoxicated. Clearly, this testimony is consistent. Moreover, the record contains no evidence other than the alleged inconsistencies to support the defendant's contention that Gerdes' testimony concerning the defendant's sobriety was perjured.

■■■ The defendant finally contends that the State erred when it failed to introduce into evidence his pants that were seized following his arrest. The defendant infers from this that the pants were in fact exculpatory. This inference is entirely unsupported by the record. According to the uncontroverted testimony of the crime-scene technician, he never analyzed the pants because no threads were recovered from the fence to make the analysis. Clearly, the failure to introduce the pants was not motivated by fears that the evidence might be exculpatory. Even assuming, *arguendo*, that the pants would have been exculpatory, this court has recently held in *People v. Williams* (1980), 81 Ill. App. 3d 122, 400 N.E.2d 980, that a defendant was not denied due process of law when the State opted not to introduce unfavorable physical evidence. Here, as in *Williams*, the evidence in question was available for the defendant's use and analysis in an attempt to establish exculpation. Thus, the defendant is in no position to claim prejudice by the State's failure to introduce the defendant's pants into evidence when he failed to avail himself of the opportunity.

Accordingly, we affirm the defendant's conviction for burglary and sentence entered in the Circuit Court of Will County.

Affirmed.

ALLOY and STOUDER, JJ., concur.